# ORIGINAL

UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH, DIVISION

FILED
U.S. DIST. COURT
SAVANNAH DIV

OCT 23  10 52 AM '00

CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| -VS- | ) | CASE NO: |
| | ) | |
| KEITH G. COLEMAN | ) | |
| Defendant, | ) | |

---

## MOTION TO AMEND EXHIBITS
### FROM DISCOVERY, WITH FACTS AND
### LAW IN SUPPORT OF TITLE 28 U.S.C 2255
### WITH INEFFECTIVE ASSISTANCE COUNSEL CLAIM

---

**Comes** now the Petitioner/Movant, KEITH G. COLEMAN, pro se and
informa pauperis, in the above titled action, respectfully requesting
this Honorable Court grant leave to file **"Attached Exhibits",** with law
and fact in supports of Title 28 U.S.C. 2255, in accordance with Federal
Rules of Civil Procedure, 15(a) " when justice so requires."


### JURISDICTION

This....Honorable Court has jurisdiction to entertain this motion
under Title 28 U.S.C. 2255, whereby the petitioner hereby, herein fully
fully appears.

/13

As a matter of introduction relevant to the issue that merits relief, also on these grounds, that **Sixth Amendment** guarantees the right to effective assistance of counsel in criminal prosecutions. See **Strickland v. Washington**, 466 US 668 (1984). In **Strickland** the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction, the defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceedings.

The court in **Strickland** stated that "the purpose of the effective assistance guarantee of the **Sixth Amendment** is...to ensure that criminal defendants receive a fair trial, **Id.** at 689. **Strickland** court states that a court must:

> "...judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

Petitioner contends counsel's performance was deficient, and less than reasonable, for is it reasonable to expect counsel to examine the record in preparing a defense that was applicable to Defendant's case, had counsel researched the record or case-law, the defense of "outrageous government misconduct" and/or the "entrapment rule" would have been applied at trial, or even as to preserve the issue on appeal. However, counsel's omission of acting in behalf of the Defendant's interest was unreasonable and below prevailing professional norms. **Kimmelman v. Morrison**, 477

US 365, 385 (1986) (failure to conduct any pretrial discovery). Also see **Groseclose v. Bell**, 130 F.3d 1161-1170 (6th Cir. 1997) (ineffective assistance when based on belief that defendant had no defense, counsel failed to conduct any legal research or obtain or review any records). **Cert. denied**, 118 S.Ct. 1826 (1998).

Under the prejudice prong of **Strickland**, had counsel reviewed the record and research the law concerning the "acts" or "over-reaching" of the government, counsel could have established a viable defense, and the Petitioner could not have been convicted under the circumstances, according to the standard of due process. Considering all the circumstances taken as a whole, had counsel engaged in reasonable investigation, made logical argument, the outcome of the trial would have been different; **Hall v. Washington**, 106 F.3d 742, 749 (7th Cir.) cert. denied 118 S.Ct. 264 (1997). Counsel's error effectively denied the Petitioner the **Sixth Amendment** right to counsel. Counsel never cited any authority to substantiate the defense expected to use in pretrial or even at trial. As stated in the initial habeas corpus (separate Memorandum of Law in Support), counsel's ineffectiveness in not examining the charges in the indictment, as well as not examining the case law in the area of the charges, constitutes counsel's ineffectiveness. Had counsel moved for dismissal of indictment based on these foregoing reasons, the Petitioner would not have been convicted under the erroneous charges, and the denial of fundamental fairness under USCA **Amendment** 5, "the standard of due process."

In **Gideon v. Wainwright**, supra, held that the **Sixth Amend-**
**ment** right to counsel was so fundamental and essential to a fair
trial, and so, to due process of law, that it is made obligatory
upon the states by the **Fourteenth Amendment**, Id. at 340, 9 L.Ed
2d 799, 83 S.Ct. 792, 23. **Gideon** rested on the "obvious truth"
that lawyers are "necessities, not luxuries" in our adversarial
system of criminal justice; 372 US, at 344, 9 L.Ed 2d 799, 83
S.Ct. 792, 23 Ohio Ops 2d 258, 93 ALR 2d 733.

The very premise of the adversary system of criminal justice
is that partisan advocacy on both sides of a case will best
promote the ultimate objective that the guilty be convicted and
the innocent go free." **Herring v. New York**, 422 US 853, 862, 45
L.Ed 2d 593, 95 S.Ct. 2550 (1975), because defendant's liberty
depends on his ability to present his case in the face of "the
intricacies of the law and the advocacy of the public prosecu-
tor," **United States v. Ash**, 413 US 300, 309, 37 L.Ed. 2d 619, 93
S.Ct. 2568 (1973); and a criminal trial is thus not conducted in
accord with due process of law unless the defendant has counsel
to represent him; "effective assistance of counsel."

"For that person who happens to be a lawyer is present
alongside the accused, however, is not enough to satisfy the con-
stitutional command....An accused is entitled to be assisted by
an attorney, whether retained or appointed, who plays the role
necessary to ensure that the trial is fair. **Strickland v. Wash-**
**ington**, 466 US at 685. ("For it has long been recognized that the
right to counsel is the right to effective assistance of counsel).
**Cuyler v. Sullivan**, 466 US at 344.

Defendant was faced with a serious offense that failed to meet the standards of due process and fundamental fairness. Had counsel invoked the procedural and substantive safeguards that distinguish the system of justice, Defendant would not have suffered the injustices that infected the trial. Counsel likewise was the same on appellate review; although represented in name by counsel, Defendant did not receive the type of assistance constitutionally required to render the appellate proceedings fair. Petitioner requested that counsel recuse herself from the case. Counsel refused (see Eleventh Circuit order) and filed the brief. Due to the timing and deadlines, the Circuit Court did not honor Petitioner's request do dismiss counsel.

Due to Petitioner being locked in the Special Housing Unit (non-disciplinary) during the pre-deadline dates of the Circuit Court, Petitioner was unable to communicate with the Circuit Court. Had counsel investigated and examined the record and the law, as well as presented the procedural and substantive safe-guards in presenting a viable defense, even as to properly preserve the issues on appeal, counsel's performance would not have fallen below professional norms and the accused would have not been prejudiced or convicted under the adversary's failure to meet standards of due process under the **Fifth Amendment** of the US **Constitution**. Counsel's omission of effectiveness denied the Petitioner his right to counsel and failed to assist the Defendant to obtain a fair decision on the merits, at trial and also on direct appeal. **Evitts v. Lucey**, 469 US 387, 83 L.Ed. 2d 821, 105 S.Ct. 830 (1985). For simply listing the issues on

review without briefing them does not preserve them, as in the instant case. **Terry v. Reno**, 99 F.3d 664 (5th Cir. 1996).

The right to appeal is more than a "meaningful ritual" although counsel need not advance every argument, regardless of the merits, urged by the appellant; see **Jones v. Barnes**, 463 US 746, 77 L.Ed 2d 987, 103 S.Ct. 3308 (1983) but the attorney must play the role of an "effective active advocate" in submitting a brief. **Swenson v. Bosler**, 386 US 258 in protecting the vital interest at stake.

If counsel had not the time to prepare or research the record, counsel should have not merely listed the issue in the brief, **Terry v. Reno**, 99 F.3d 664, but brief appellate court concerning the right to a preparation period sufficient to ensure a minimal level of quality of counsel. **United States v. Padilla-Martinez**, 762 F.2d 942 (11th Cir. 1985).

Rather than counsel arguing the "overreaching" of the government, or substantiating the "entrapment defense," counsel's incompetent summation literally implied that the Defendant was guilty of the charges against him. Counsel quoted in closing arguments:

"You without fault, cast the first stone."

This statement literally implied that the accused was guilty, and the counsel's reasoning for the prejudice remark appears to be that because no individual was perfect, the jurors personal conviction would render them unable to render a verdict; irrespective of the applicable rules of law. Although the

criminal justice system is far from perfect, and all those whom dwell therein. But the standard of law in criminal trials is not based on an "imaginary child" of perfection, but rather "funda-mental fairness" and "reasonable doubt."

For if there was any doubt in the minds of the jurors as to Defendant's guilt, it was terminated after counsel's consummation. In fact the prosecution used the statement against the accused to indicate that counsel admitted to the court the Defendant's guilt. Counsel's performance rendered the procedural and substan-tial safeguards meaningless. See **United States v. Yee-Chan**, 17 F.3d 21 (2d Cir. 1994), **United States v. Tomblin**, 42 F.3d 263 (5th Cir. 1994).

Counsel's consummation only presented resentment of the public or community interest in government's using  taxpayers dollars to create crime, rather than presenting legal rules to protect fundamental fairness and due process of client's right. Taxpayers are the interest of legislature and Congress. Funda-mental fairness in trials are the interest of ccurts. See **Harich v. Wainwright**, 813 F.2d 1082 (11th Cir. 1987) (trial counsel's failure to research and understand the law based on **Harich**'s intoxication defense may constitute ineffective assistance and required an evidentiary hearing. See also **Goodwin v. Balkcom**, 684 F.2d 794 (11th Cir. 1982 (trial counsel's lack of pretrial investigation which deprived defendant of potential defense, constituted ineffective assistance of counsel) and **Miller v. Wainwright**, 798 F.2d 426 (11th Cir. 1986) (trial counsel's failure to investigate alternative line of defense may constitute

ineffective assistance of counsel). Also, **United States v. Burton**, 575 F.Supp. 1320 CE.D. Texas 1983) (defense counsel must be familiar with the laws and facts of the case in order to provide effective assistance of counsel). And because counsel is not required to raise her own ineffectiveness on appeal in order to preserve claim for 28 USC 2255, this issue is cognizable that merits relief; i.e. evidentiary hearing on the facts inside as well as outside the record. **Page v. United States**, 884 F.2d 300 (7th Cir. 1989).

As a matter of substantial right and justice, Petitioner attempts to substantiate his claim, i.e. violation of due process, to include the right to effective assistance of counsel. Petitioner previously filed a **Title 28 USC 2255** habeas corpus. Within Petitioner's claim, the charges of the indictment were contested, i.e. Count (1) "Conspiracy" to aid and abet the distribution of cocaine in violation of 846, and the remaining counts "attempt" to aid and abet the distribution of cocaine in violation of 846.

Petitioner also, through letters to this court, advised that he was unable to fully litigate his claim due to not being able to obtain all the "discovery," through due diligence. Finally, Petitioner has obtained in full the Grand Jury transcripts, of which he only had in part, from counsel.

However, Petitioner is without counsel to obtain discovery, and prays this court grant leave in allowing Petitioner to file the amended exhibit with facts and law in support.

Giving this amendment would not cause "undue delay" and

* 8 *

"there is no evidence of bad faith by Petitioner or prejudice to respondent, **Holiday v. Johnston**, 313 US 342, 350 (1941), **Gillette v. Tansy**, supra, 17 F.3d at 312-13, but the ends of justice will be served. Also see **Shipner v. Eastern Airline, Inc.**, 868 F.2d 401, 407 (11th Cir. 1989). See **Wilwording v. Swenson**, 502 F.2d 844, 847 n.4 (8th Cir. 1974) cert. denied, 420 US 912 (1975) (courts "welcome" amendment clarifying pro se petitions; amendments preferred because they avoid successive petitions and indicate whether hearing is necessary).

Petitioner states with law and facts in support, i.e. that the "conspiracy" to aid and abet the distribution of cocaine in violation of 846, as well as the "attempt" to aid and abet the distribution of cocaine in violation of 846 is inapplicable in Petitioner's cases, due to the inability to "conspire" with the government or aid and abet the government in a crime against itself. (See attached Grand Jury transcripts, which rather displays "outrageous misconduct" by the government.) For when courts rely on their inherent common-law powers to interpret criminal statutes, such as "conspiracy and attempt" or "aiding and abetting," consideration peculiar to the criminal content must be acknowledged.

Because our federal government possesses only the limited powers given to it in the **Constitution**, and because lower federal courts possess no powers beside those expressly granted by Congress, it has long been recognized that federal trial courts lack power to allow the government to create common-law crimes. For this exhibit clearly substantiates or record, the testimony

of the FBI case agents, violating its own laws, as well as this circuit's law in "creating crime." The government's actions in this case is a model example of "outrageous government misconduct" that violates principles of fundamental fairness that denied the Petitioner's **Fifth Amendment** guarantee that he not be deprived of liberty without due process of law. This rule was violated by the government's agents, which is fundamentally unfair to the Petitioner and shocking to the traditional sense of justice. **Kinsella v. United States**, ex rel **Singleton**, 361 US 234, 246 80 S.Ct. at 30-04, 4 L.Ed 2d 268 (1960) such conduct in this case was so "outrageous" that common notions of fairness and decency would be offended, were judicial processes allowed to succeed in a conviction against the Petitioner; see **United States v. Russells**, 411 US 423, 431-32, 93 S.Ct. 1637, 1642-43, 36 L.Ed 2d 366 (1973).

The government involvement in the manufacturing of crime is demonstrably "outrageous" by overwhelming evidence, i.e. by creating the crime, provoking and masterminding it, producing the instrument of violation (drugs), paying for its protection of the offense, of the created crime against itself, and prosecuting those whom it coerced in allegedly participating in its own conspiracy. "That cannot exist."

The courts have consistently set aside convictions where the government conduct is so outrageous that it violated due process of law. See **United States v. Lard**, 734 F.2d 1290, 1292, 1296-97 (8th Cir. 1984) (involving ATF agents who help defendants make a pipe bomb) or **United States v. Twigg**, 588 F.2d 373 (3d Cir. 1978)

(involving DEA agents who conceived drug crimes and supplied defendants with the means to accomplish it). Although there is no Supreme Court decisions that has reversed a conviction on this basis, the agents conduct in this case went far beyond the behavior found permissible in previous cases.

In **Russells, supra**, the district court's conviction was reversed by the Ninth circuit. In reversing the defendant's conviction, the court relied on two theories, **United States v. Russells**, 459 F.2d 671 (9th Cir. 1972) rev'd. 411 US 423, 93 S.Ct. 1637, 36 L.Ed 2d 366 (1973). First, the government's supply of P-2-P constituted entrapment as a matter of law, regardless of prepdisposition. Second, the police conduct was so repugnant that due process principles barred prosecution.

Nevertheless, the Supreme Court reversed as to both theories. The court held that absence of predisposition is the focal point of the entrapment defense. And on the second theory, the court explicitly left the defense available, but decided it was not applicable on the facts of the case:

> "While we may one day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction....the instant case is distinctly not of that breed. The agents contribution of propanone to the criminal enterprise already in process was scarcely objectionable....The law enforcement conduct here stops far short of violating that funda-

> mental fairness, shocking to the universal
> sense of justice," mandated by the due
> process clause of the **Fifth Amendment.** 411 US
> at 431-32, 93 S.Ct. at 1643 (emphasis
> supplied).

The court went on to make an important point not present in Petitioner's case——that the defendant "was an active participant in an illegal drug manufacturing enterprise which began before the government agent appeared on the scene"...Id. at 436, 93 S.Ct. at 1645. Another similar case of this nature by which the Supreme Court dealt with considering the fundamental fairness defense in this type situation was **Hampton v. United States**, 425 US 484, 96 S.Ct. 1646, 48 L.Ed 2d 113 (1976).

Although **Hampton** was affirmed by the court, they gave three separate opinions, which argued that the remedy of "the criminal defendant with respect to the acts of the government agents...lies solely in the defense of entrapment" Id. at 490, 96 S.Ct. at 1650. Justice Powell, joined by Justice Blackman, concurred in the result but refused to foreclose reliance on the fundamental fairness defense even where predisposition is shown. Justice Powell based the defense on due process principles on the court's supervisory powers. Notwithstanding the defense would be rare, the police over-involvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction, Id. at 495 n. 7, 96 S.Ct. at 1653 n. 7 (Powell, J. concurring). The dissenting justices argued that the defense of entrapment should focus on the police conduct. They believed that the behavior of law enforcement officers in **Hampton** was sufficiently

offensive to bar conviction.

Hampton was concerned with the sale of an illegal drug, a much more fleeting and elusive crime to detect than the operation of a government-owned "imaginary child" drug ring, as in the instant case. Furthermore in Hampton, a reading of the jury instructions requested by the defendant reveals he was concerned merely with the principle that the narcotics were supplied to him by an informant acting on behalf of the government, then he must be acquitted as a matter of law. Id. at 488, 96 S.Ct. 1646.

Whether or not there was government investigation in Hampton is a factual question which the plurality and concurring opinions left unresolved. According to the government's version of the facts, the Defendant (not the government) initiated the crime and supplied the heroin. The Defendant admitted to soliciting and carrying out the sales which led to his arrest, Hampton, supra, 425 US at 485-87, 96 S.Ct. 1646.

In this case however, it is not only a concern with the alleged distribution of drugs among the agents only but the court has before it a crime "unlike" Hampton, conceived and contrived by government agents. Although the rule that was left by Hampton is that proof of predisposition to commit the crime will bar application of the entrapment defenses, yet fundamental fairness will not permit any defendant to be convicted of a crime in which police conduct was "outrageous." See United States v. Prairie, 572 F.2d 1316, 1319 (9th Cir. 1978). Also United States v. Graves, 556 F.2d 1319, 1322 (5th Cir. 1977). In United States v. West, 511 F.2d 1083 (3d Cir. 1975), the court reversed a

conviction primarily on fundamental fairness grounds. On facts similar to Hampton, Judge Hastie wrote:

> But when the government's own agent has set
> the accused up in illicit activity by
> supplying him with narcotics and then intro-
> ducing him to another government agent as a
> prospective buyer, the role of government has
> passed the point of toleration. Moreover,
> such conduct does not facilitate discovery or
> suppression of ongoing, illicit traffic in
> drugs. It serves no justifying social
> objective. Rather, it puts the law enforce-
> ment authorities in the position of creating
> new crime for the sake of bringing charges
> against a person they had persuaded to par-
> ticipate in wrongdoing. **Id.** at 1085.

In an earlier case **Greene v. United States**, 454 F.2d 783 (9th Cir. 1971), the court found sufficient government over-involvement to preclude a conviction. Defendants in that case were convicted of charges stemming from the illegal manufacturing of alcohol. An undercover agent reestablished contact with defendants after their previous arrest on bootlegging charges. For over two years the agents was involved in the defendant's operation—offering to supply materials, an operation and location for the still and actually supplying sugar at wholesale prices. The agent was the sole purchaser of all the liquor produced by the illegal still.

The Ninth Circuit held that entrapment defense was not available because the defendants were predisposed to commit the crime. However, the court ruled that the defendants could not be

convicted because of over-reaching by the government:

> We do not believe the government may involve itself so directly and continuously over such a long period of time in the creation and maintenance of criminal operations, and yet prosecute its collaborations. As pointed out in Sherman v. United States, 356 US 369, 78 S.Ct. 819, 2 L.Ed 2d 848...a certain amount of stealth and strategy 'are necessary weapons in the arsenal of the police officer." But, although this is not an entrapment case, when the government permits itself to become enmeshed in criminal activity, from beginning to end, to the extent which appears here, the same underlying objections which render entrapment repugnant to American criminal justices are operative. Id. at 787.

Other cases bear some resemblance to the facts in the instant case, i.e. United States v. Leja, 563 F.2d 244 (6th Cir. 1977) (defendant approaches a government informant), United States v. Smith, --- F.2d 1359 (9th Cir. 1976) (the defendant was completely in charge of the operation of producing methamphetamine). Clearly distinguishable is the conduct of the agents as well as the Petitioner than of those cases, whereas the government's agent contacted the Defendant in this case (see discovery of tapes, initial conversation of CI, making several attempts to contact the Petitioner on the grounds of hearsay, that Petitioner may participate in the government's drug trafficking scheme). Also the Petitioner maintained no control over the government's operation, as in the case of Smith. In opposing the government's offer of evidence, in its attempt to meet the requisite that the

traditional entrapment defense is only available to those defend-
ants brought into criminal enterprise directly by government
agents. If a defendant is induced by a third party not connected
with law enforcement officials to commit a crime, then the
defendant may not raise the defense. <u>United States v. Garcia</u>, 546
F.2d 613, 615 (5th Cir.) cert. denied, 430 US 958, 97 S.Ct. 1608,
51 L.Ed 2d 810 (1977).

The government alleged, but never proved, that a third
participant induced the Petitioner; but the tapes of the initial
conversation clearly shows that the defendant was contacted and
induced by the CI. (Not limited to phone calls, conducting
meetings, privately without the FBI's supervision.)

However, no case has been found that considers the third
party issue when "over-reaching" by the government is the basis
of the defense. The fundamental fairness defense compels the
court to resolve this question of "over-reaching" in light of all
the circumstances. The court must be reluctant to establish a per
se rule barring the use of this defense to anyone who was not
directly induced by a government agent. For infiltration of crim-
inal operations by informers and undercover agents is an accepted
and necessary practice. Yet this court must not "shirk" the respon-
sibility that is necessarily in its keeping...to accommodate the
dangers of overzealous law enforcement and civilized methods
adequate to counter the ingenuity of modern criminals; <u>Sherman v.
United States</u>, 356 US 369, 381, 78 S.Ct. 819, 825 2 L.Ed 2d 848
(1958) (Frankfurter, J. concurring in result). "Prosecutors and
their agents naturally tend to assign great weight to the

societal interest in apprehending and convicting criminals; the danger is that they will assign too little to the rights of citizens to be free from government-induced criminality." **United States v. Acher**, 486 F.2d 670, 677 (2d Cir. 1973) (Friendly, J.)

Petitioner contends that due process in essence means fundamental fairness and the Supreme Court, as well as circuit courts, are replete with examples of judgments as to when fairness has been denied an accused in light of all the circumstances. The fact there is sometimes no sharply defined standard against which to make these judgments is not itself a sufficient reason to deny the federal judiciary's power to make them when warranted by the circumstances. Nor is this court impotent of its ability in an appropriate case, such as the instant case, to identify appropriate standards for police practices without relying on the "chancellor's "fastidious squeamishness or private sentimentalism."

For from the time or birth of the offense until arrest, all actions taken by Petitioner was done at the specific directions of the agents; (see grand Jury transcripts of agents' testimony, pg. __7__ line __1__ ). Nothing in terms of expertise, money, supplies or warehouses, or ideas were contributed by the Petitioner, to accomplish the scheme of alleged drug trafficking. Yet, everything was supplied by the government agents, to include pagers, cell phones and wining and dining in order to coerce the Petitioner in submitting to its scheme. In light of these facts the convictions is tainted; see **United States v. Tobin**, 662 F.2d 381 (1981), holding that government may not instigate criminal activity, provide place, equipment, supplies and know-how, and

run entire operation with only meager assistance from defendant without violating fundamental fairness. **USCA Amend. 5** (quoting **Twigg**. See **Rochin v. California**, 342 US 165, 96 L.Ed 183, 72 S.Ct. 205 (1952), holding substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs.

Among other things, this is a case of "manufactured jurisdiction;" see **United States v. Archer**, 486 F.2d 670 (2d Cir. Petitioner case involved an alleged scheme by the government to ferret out corruption within the City of Savannah police department. In the sovereign state of Georgia, the court held in **Archer** on reconsideration that the decision "went no further than to hold, that when the 'federal element' in a prosecution under the Travel Act is furnished solely by undercover agents, a stricter standard is applicable than when the interstate or foreign activities are those of the defendants themselves"...**Id.** at 685-86 (cited in **US v. Perrin**, 580 F.2d 730, 736 (5th Cir. 1978), affirmed on other grounds, 44 US 37, 100 S.Ct. 311, 62 L.Ed 2d 199 (1979)

Courts considering this claim of "manufactured federal jurisdiction" have generally focused on two factors:(1) as suggested by the above **Archer** quote, whether it was the defendants themselves or government agents who committed the act that made the crime federal, which is invariably an act with an interstate element, and (2) whether the act providing the interstate nexus, which is presumably directed by the government to some extent, has significance in the case other than providing federal juris-

diction. **Peters**, 952 F.2d at 964; see **United States v. Cortes**, 949 F.2d 104 (4th Cir. 1991 (in reversing the judgment the court noted that the government agent drove across state line for the sole purpose of making a phone call in order to induce the defendant to use that interstate facility to discuss the scheme). As in the instant case, there are no "acts" of the accused which would render federal jurisdiction, other than the acts of the agents themselves, that impermissibly manufactured the "federal element" that has never been established by the government.

The doctrine of "manufactured jurisdiction" has been called a "cousin" of the doctrine of entrapment and outrageous misconduct; see **United States v. Podolsky**, 625 F.Supp. 188, 194 (N.D. Ill. 1985) aff'd. 798 F.2d 177 (7th Cir. 1986), which is totally an appropriate issue, that the ends of justice require the government to satisfy the jurisdictional, and federal element, that cannot be waived upon contesting, neither can it be presumed. In **The County Court v. Allen**, 442 US 140 (1979) the Supreme Court cautioned that a presumption will not be constitutionally valid if it undermines the factfinders responsibility to determine the existence of the essential elements of a crime beyond reasonable doubt. **Mullaney v. Wilbur**, 421 US 684, 702-03 n. 31 (1974) and the essential element in this case has been presumed through "manufactured jurisdiction," rather than an established "federal element." In violation of the **Tenth Amendment** of US **Constitution**.

Thus, it is well-settled that there are no common-law offenses against the United States in this case. Of course, federal courts may look to — and develop — a federal common law

interpreting a statute that creates a federal offense. But in exercising that power the federal courts do well to remember that the most fundamental elements of our constitutional scheme commits it to defer to legislative authority, or case-law in that area.

It is incumbent upon the courts moreover, to exercise that deference by refraining from creating, out of common-law materials, new crime, not expressly authorized by Congress. For the modern crime of "conspiracy" is already so vague that it almost defies definition and so pervasive that, if not given judicially defined limits, it would constitute a serious threat to fairness in the administration of justice; **Krulewitch**, 366 US at 445-46, 69 S.Ct. at 719-20, thus when the government creates a conspiracy, case-law in that area precludes the prosecution of it. As (Jackson, J. concurring) concluded that judges should avoid expanding the reach of conspiracy, **Krulewitch**, **supra.**

The evidence overwhelmingly and conclusively exhibits a case of government "over-involvement," for there is no way for these alleged illegal acts to be committed except the government accomplish them. Petitioner has no means of producing what the government supplied to commit their acts. There's no evidence in Petitioner's history to suggest he could have committed the acts. The government's agents clearly, deliberately "overreached" in this case, constituting "outrageous government misconduct."

As Mr. Justice Brandies quoted in **United States v. Casey**:

> "This prosecution should be stopped, not be-
> cause some right of Casey has been denied,

> but in order to protect the government. **411
> US 443.** To protect it from illegal conduct
> of its officers.

This exact reasoning should apply in this case; for whatever
may have the demerits of the Petitioner, or his previous alleged
infractions of law, which were none, this will not justify the
instigation and creation of a new crime. As Mr. Justice Roberts
describes it as the "prostitution of criminal law," see **Sorrells
v. United States**, 387 US 457, "was the evil at which the defense
of entrapment was aimed, there can be no "conspiracy " in this
case. Petitioner respectfully request this court view the
(attached Grand Jury transcript, Page 7, lines 1-7 and page 63,
lines 21-25, and page 64, lines 1-6 [exhibits]). This case is
distinguishable from **Russells**, **supra, 411 US 423.** Whereas, the
agents involvement was minor, "a taste of honey" compared to the
agents conduct in the instant case. The distinguishable fact in
**Russells**, unlike in the accused case, is that "accuses concession
that the jury could have found **Russells** predisposed to commit the
offense of which he was found guilty, because of his involvement
in making the drugs prior to, and after the government's involve-
ment; **Id. at 436.** Petitioner's case should have been decided
differently for lack of predisposition to commit the alleged
offense. See also **United States v. Lively**, 803 F.2d 1124
**(reversed).** It is of this circuit rule of law that a defendant
may not be convicted of conspiracy with the government; also is
this circuit's law, that the government may not create the crime.
Because a single conspiracy is a "wheel" but as the Supreme Court

has observed, when the government is the hub, conspiracy cannot be established, for there is no rim. The acts for which the government seek to punish the defendant is the fruit of their criminal conspiracy to induce its commission.

Another notable point, had counsel argued that any fact that increases the penalty for a crime beyond the maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond reasonable. **Jones v. United States**, 526 US 227, Petitioner would not have been sentenced outside the statutory maximum. See **Apprendi v. New Jersey**, 2000 WL 807189, in violation of **Fifth Amendment's** due process clause and **Sixth Amendment's** notice and jury trial guarantee, citing **United States v. Gaudin**, 515 US 506, 510 115 S.Ct. 2310, 132 L.Ed. 2d 444 (1995). For this constitutional guarantee of the "reasonable doubt" standard applies to the trier fact (jury), on alleged drug amounts, and facts that increases the penalty outside the maximum statutory range i.e. (obstruction of justice and/or role in offense), that were not charged. See **Harris v. United States**, 149 F.3d 1304, 1309 (11th Cir. 1998).

Because counsel failed to argue this issue, the Petitioner suffered severely and counsel's good-faith reliance does not mitigate the severe penalties. Because the Petitioner was not charged with the facts that increased the penalties, counsel should have argued, that the Petitioner was "actually innocent" of the penalties of that which increase the maximum statutory range. See **Bousley v. U.S.**, 118 S.Ct. 1604 (1998).

By counsel's omission of substantiating this issue of due process, Petitioner has failed to receive the support of procedural and substantive safeguards. For today **Apprendi** rejects this finding of drug amounts by the trial judge as sentencing factors, as in the Petitioner's case. But rather the increased range in sentencing for drug amounts or any factor that extends the maximum sentence, must be stated in the indictment, submitted to a jury and proved beyond a reasonable doubt (FN 6 in **Jones**).

Counsel failed to brief the trial court in pretrial, trial and appellate review; the right to the **Fifth Amendment** guarantees those accused of "infamous crimes" the right to be tried "only" on an indictment and elements specifically returned by a Grand Jury, for which the adverse party seeks to impose punishment; see **Ex Parte Bain**, (1887( 121 US 1, 30 L.Ed. 849, 7 S.Ct. 781, the Supreme Court held:

> "That if it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been or what the Grand Jury would properly have made if their attention had been called to suggest changes, the great importance, which the common law attaches to an indictment by a Grand Jury, as a prerequisite to a prisoner's trial for crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed."

See **United States v. Fern**, 155 F.3d 1318, 1324-1325 (11th

Cir. 1998). The failure of a Grand Jury to find probable cause as to every element is not a "technical" deficiency. It is inherently and necessarily prejudicial to a defendant; see also **Russell v. United States**, 369 US 749, 770 (1962) (citations omitted). The omission if a crucial element from an indictment is considered a substantive, jurisdictional defect in the indictment, requiring reversal without proof of prejudice; see **United States v. Gayle**, 967 F.2d 484, 485 (11th Cir. 1992) (en banc), **cert. denied**, 507 US 967 (1993); **Fern**, 155 F.3d at 1324-25; (see omission of **Title 21 USC 841(a)(1)** in Grand Jury transcript; page 3, lines 18-25 and page 4, lines 1-4 in attached exhibits in habeas).

More than notably, counsel should have applied the case-law to the charges in the indictment, that was insufficient on its face, and structurally defected, that warranted dismissal, see (**Stirone v. United States**, 361 US 212, 217 (1960) (deprivation of right to be tried only of charges returned by a Grand Jury "is far from too serious to be treated...as harmless error"), **United States v. Weissman**, 899 F.2d 1111, 1114 (11th Cir. 1990) (citing **Stirone**).

Considering the totality of the foregoing circumstances counsel's omission of research of the record, as well as research of case-law in the area of the charges against the accused, did not meet the constitutional command, in the area of counsel's performance, which prove less than reasonable under professional norms.

These omissions inevitably caused the Petitioner's trial to

be fundamentally unfair, in violation of Petitioner's **Fifth Amendment** right to due process and Grand Jury clause as well as Petitioner's **Sixth Amendment** right to counsel and jury trial guarantees.

### CONCLUSION

Our criminal justice system runs on the premise that prosecutors and government agents will respect, and courts will enforce, the boundaries on criminal conduct set by the legislature. Whereas here those boundaries are breached, it becomes impossible to tell where prosecutorial discretion ends and prosecutorial abuse or discrimination begins. Finally, federal agents also play a debased role when they become the instigators of the crime or partakers in its commission, or even the creative brain behind the illegal scheme. Justice Roberts held in **Sorrells**, supra:

> "The applicable rule is that court must be closed to the trial of a crime instigated by the government."

There are no extraordinary circumstances in this case to veer from Justice Roberts conclusion, or any that may prevent this court from applying this conclusion which is on point in Petitioner's case; even as to serve the ends of justice and preserve the integrity of this federal court.

> "For the government may set decoys to entrap criminals but it may not provoke or create a crime and then punish the creature it creatured. **Casey**, supra, 432 L.Ed. 632 (Justice Brandies).

There can be no questions that the circumstances in this case inherently warrant relief under 2255; to preserve the Petitioner's **Fifth Amendment** right to due process and **Sixth Amendment** right to effective assistance of counsel.

<u>RELIEF SOUGHT</u>

Wherefore, Petitioner/Movant would move this Honorable Court to grant relief by **(1)** dismissing the indictment with prejudice as a matter of law, or **(2)** in the alternative, vacate Petitioner's conviction and remand back to the district court, to grant relief this court feels necessary.

Respectfully submitted,

Keith Coleman
Reg. No. 09587-021
PO Box 26030
Beaumont, TX 77720-6030

" EXHIBITS OF GRAND JURY TRANSCRIPTS "

AND AFFIDAVIT

1    organization by Coleman, Coleman and the individual

2    officers, London, Gorham, Welcome, Johnson, were met by

3    our criminal informant or our undercover agents,

4    advised that the shipments were involving cocaine,

5    advised generally what they would be expected to do.

6    And then again, before the scenarios occurred, were

7    advised as to what they would be expected to do.

8         Q    Specifically with regard to Mr. Gorham and

9    Mr. London, did the informant tell them that if they

10   didn't want to do it, they were free to go and there

11   would be no hard feelings and that kind of thing?

12        A    Yes, sir.  There was a contact at the

13   warehouse office where discussion generally occurred

14   regarding an upcoming shipment.  They were advised

15   repeatedly that it was cocaine that was coming in and

16   just after they were advised of that, the informant

17   told them there would be no hard feelings if they would

18   like to walk out the door right now and have no further

19   involvement.  They chose to stay and the transaction

20   occurred.

21        Q    Did Mr. Coleman also give indications, when

22   speaking to the undercover agent, that they had done

23   this type of thing before; Gorham and London?

24        A    Yes, sir.  He indicated that they were

25   Rangers, military officers or military -- I think it

000809

USA SDGA

63

1    there come a point where the FBI established a

2    warehouse?

3          A    Yes, sir.

4          MR. BOURNE:   Tell the grand jury about that

5    and what purpose that used?

6          A    As I indicated previously, the informant had

7    advised the officers that we were going to be moving

8    larger amounts of narcotics through the Savannah area,

9    that the Miami people, in this case the undercover

10   agents, wanted to use Savannah as a storage facility

11   for narcotics to be transported from Miami to

12   Savannah, stored here for a period of time, and then

13   moved out by numerous couriers.   In other words,

14   couriers from various cities would come to Savannah

15   and pick up whatever varying amount of drugs for them

16   to be shipping back to their respective cities.

17         So a warehouse setting and an office attached was

18   established here in Savannah.   It was, again, wired

19   with various types of equipment that would enable us

20   to record contacts and audio, both audio and video.

21         MR. BOURNE:   And for what purpose did you

22   establish the warehouse?   Had you been receiving

23   information that there were still others out there

24   open to this type of opportunity?

25         A    Yes, sir.   The indication was, again, we

100719
USA 5021

64

1   were getting from the officers that there were more

2   people that would be willing to do this and, in order

3   to justify their existence and their involvement, we

4   had to have our drug trafficking organization grow, so

5   we would be requiring to have more couriers come in,

6   justifying the need for more police officers.

7         MR. BOURNE:  Did you get the sense that the

8   officers were reluctant to bring others in for fear of

9   losing some of their income?  In other words, if more

10   were brought in, that the police guardians of this

11   cocaine would not get a bigger cut?  Did you fear

12   that?

13       A     There was some indication of that, that they

14   were concerned that the cuts would be diminished to a

15   certain degree.  However, they were still interested

16   in keeping the activity ongoing because if, in fact,

17   they couldn't support a large organization as they

18   were starting to propose, they were -- they were

19   thinking that maybe this organization would just pull

20   out and no longer be in Savannah and wouldn't be

21   available to them to work for.

22         MR. BOURNE:  All right.  And as a result of

23   this, did you propose scenarios which required greater

24   assistance or greater challenge to these protecting

25   officers?

000790
US: CT.

" AFFIDAVIT "

**Comes now** the petitioner, KEITH G. COLEMAN, in the above ti-tled action, respectfully presenting to this Honorable Court, and declares in support of Title 28 U.S.C. 2255;

(1) That Counsel/Attorney Joyce Griggs of 2875 HWY. 80 Savannah, Georgia 31408, did in fact represent the petitioner in pre-trial, Trial and Appellate Review.

(2) That counsel Griggs was in fact made aware of the uncharged and unstated offenses in the indictment, as well as the charging instrument being structurally defected, by the petitioner.

(3) Counsel failed to respond to petitioner regarding the issues prior to appellate review, after numerous attempts by the accused and failed to address the petitioner's issues on appeal.

(4) Defendant respectfully requested that counsel recuse herself in written letters, and the petitioner likewise forwarded  a let-ter to the 11th Circuit Court of Appeals , requesting to dismiss counsel, but due to the petitioner being isolated from population and excess to material to inform the court in a timely manner,the proceedings continued.

(5) Petitioner was isolated without access, in Separate Housing Unit, from the 1st week of Oct. 98,until the 1st week of Feb.99 for non-disciplinary actions,(security precautions).

(5) Petitioner's Appellate beief was due in the Circuit Court on about 19th of Dec. 98

## AFFIDAVIT CONTINUED

To avoid needless repetition of lengthy factual statements, the affiant hereby affirms under the pains and penalty of perjury the truth of said statement to be the best of his recollection without having the benefit of a verbatim transaction of the recor

Thus, I declare under penalty of perjury that the foregoing statements is true and correct, and willingly and intellegently given. And petitioner will testify to the following.

Sign this 12th day of Oct. ,2000.

KEITH G. COLEMAN 09587-021

P.O. BOX 26030

BEAUMONT, TEXAS 77720-6030

# *CERTIFICATE OF SERVICE*

I, **KEITH G. COLEMAN** hereby certify that I have served a true and correct

copy of the following:   **AMENDMENT TO TITLE 28 U.S.C. 2255**
**EXHIBITS AND FACTS WITH LAW IN SUPPORT**

" **GRAND JURY TRANSRCIPTS** " **(AFFIDAVIT)**

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, *Houston v. Lack*, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

**(3) Copies**
Att: **Clerk of Court**
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH, DIVISION
P.O. BOX 8286
SAVANNAH, GEORGIA 31412

**(1) Copy**
U.S. DEPARTMENT OF JUSTICE
U.S. ATTONEY'S OFFICE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH, DIVISION
P.O. BOX 8999
SAVANNAH, GEORGIA 31412

and deposited same in the United States Postal Mail at the United States Penitentiary, Lompoc, California, on this: **12th** day of: **OCT**, 2000.

KEITH G. COLEMAN 09587-021
3901 Klein Boulevard
Lompoc, California 93436