ORIGINAL

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | |
|---|---|
| KEITH G. COLEMAN ) | |
| ) | CV 400-54 |
| v. ) | underlying CR 497-181 |
| ) | |
| UNITED STATES OF AMERICA ) | |

### GOVERNMENT'S SUPPLEMENTAL RESPONSE
### TO COLEMAN'S 28 U.S.C. § 2255 MOTION

COMES NOW the United States Attorney for the Southern District of Georgia and files this Supplemental Response to Keith Coleman's motion pursuant to 28 U.S.C. § 2255 on the issue of whether the case of <u>Apprendi v. New Jersey</u>, 120 S. Ct. 2348 (2000), enunciates "a new rule of constitutional law" that should be made retroactive to Coleman's case on collateral review?

## I. INTRODUCTION

Keith Coleman has filed a 28 U.S.C. § 2255 motion that the government responded to. Coleman then filed a Motion to Amend his Petition, citing in part, claims under <u>Apprendi</u>. The government filed a Response to Coleman's Motion to Amend asking that the Court deny the petitioner's motion. By this pleading, the government supplements its previous response, again urging the Court to deny Coleman's Motion to Amend.

## II. UNDER A <u>TEAGUE</u> ANALYSIS, <u>APPRENDI</u> IS NOT COGNIZABLE ON COLLATERAL ATTACK

The Eleventh Circuit has previously ruled that <u>Apprendi</u> claims are not cognizable in second, successive § 2255 petitions. <u>In re Joshua</u>, 224 F. 3d 1281, 1282 (11th Cir. 2000). The Eleventh Circuit has not yet ruled on whether <u>Apprendi</u> claims apply in initial § 2255 petitions.

The government respectfully submits that they do not.

Recently, the Ninth Circuit denied a state prisoner's <u>Apprendi</u> claim in an initial habeas corpus petition. In <u>Jones v. Smith</u>, 2000 WL 1664426, 8 (9th Cir. Nov. 7, 2000), the Circuit Court determined that the non-retroactivity principle pronounced in <u>Teague v. Lane</u>, 489 U.S. 288 (1989)(plurality opinion), prevented a petitioner from benefitting from <u>Apprendi</u>'s new rule on collateral review. The government submits that this Court should follow the lead set forth <u>In re Joshua</u> and <u>Jones v. Smith</u> and not set a precedent in the Eleventh Circuit making <u>Apprendi</u> claims cognizable in § 2255 cases.

<u>Teague v. Lane</u>, 489 U.S. at 310, limits the retroactive application of new constitutional rules to cases on collateral review. In <u>Teague</u>, the Supreme Court established the principles for determining when a change in the law should be applied retroactively to cases on collateral review.[1] When a decision announces a "new rule," it is not given retroactive effect in cases that had become final before it was decided. This non-retroactivity principle is based on the purposes of the writ of habeas corpus and considerations of finality in the criminal law. The writ of habeas corpus exists as a safeguard against a fundamental miscarriage of justice; it has never been defined "by reference to a perceived need to assure that an individual accused of crime is afforded a trial free of constitutional error." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 447 (1986) (plurality opinion); <u>Teague</u>, 489 U.S. at 308. The purpose of collateral review is to ensure that courts conduct their proceedings in a manner consistent with the law in existence at the time, "and not to provide a mechanism for the continuing reexamination of final judgments based upon

---

[1]   Although the <u>Teague</u> principle was stated in Justice O'Connor's plurality opinion in that case, that principle has been applied by a majority of the Supreme Court in a number of cases. See <u>O'Dell v. Netherland</u>, 521 U.S. 151 (1997); <u>Graham v. Collins</u>, 506 U.S. 461 (1993); <u>Sawyer v. Smith</u>, 497 U.S. 227 (1990).

later emerging legal doctrine." Teague, 489 U.S. at 308. The distinction is important, because "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." Id. at 309. Accordingly, the "new rule" principle of Teague "validates reasonable, good-faith interpretations of existing precedents made by [lower] courts even though they are shown to be contrary to later decisions." Butler v. McKellar, 494 U.S. 407, 414 (1990); Saffle v. Parks, 494 U.S. 484, 488 (1990).

The Supreme Court has defined a "new rule" for purposes of Teague as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. 461, 467 (1993); Sawyer v. Smith, 497 U.S. 227, 234 (1990); Teague, 489 U.S. at 301; see also O'Dell v. Netherland, 521 U.S. 151, 164 (1997) (test for whether decision announces new rule is whether, at the time of the decision, a "reasonable jurist" would have felt "compelled" to adopt the rule it stated). Under that standard, Apprendi clearly adopted a new rule. No prior decision had "dictated" that any fact other than recidivism that increases the statutory maximum penalty for an offense must be found by the jury beyond a reasonable doubt. Indeed, in Monge v. California, 524 U.S. 721, 729 (1998), the Supreme Court expressly stated that it had "rejected an absolute rule that an enhancement constitutes an element of the offense any time that it increases the maximum sentence to which a defendant is exposed." In Jones v. United States, 526 U.S. 227 (1999), in which the Court held, as a matter of statutory construction, that the subsection of the carjacking statute (18 U.S.C. 2119(2)) that provides for an increased maximum penalty if the carjacking results in serious bodily injury defines a separate offense, the Court explained that treating serious bodily injury as a sentencing factor would "raise serious constitutional questions on which precedent is not dispositive." 526 U.S. at 251. The

Court stated that because its "prior cases suggest[ed] rather than establish[ed]" the principle that facts that increase the statutory maximum must be proved to the jury beyond a reasonable doubt, its constitutional concerns rose "only to the level of doubt, not certainty," id. at 243 n.6, and it dismissed the concerns expressed by four dissenting Justices by making clear that its decision did not "announce any new principle of constitutional law." Id. at 251 n.11.

That "new principle of constitutional law" was announced the following year in Apprendi. Although the Court noted (120 S. Ct. at 2355) that its holding was "foreshadowed" by its decision in Jones, it is clear that a rule may be new under Teague even though it finds support in prior cases. Sawyer v. Smith, 497 U.S. at 236. The four dissenting Justices in Apprendi stated that the Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), "constituted a clear repudiation of the rule the Court adopts today," and noted that the majority could not "identify a single instance" in which the Court had "applied, as a constitutional requirement, the rule it announces today." 120 S. Ct. at 2381, 2387 (O'Connor, J., dissenting). See Sawyer v. Smith, 497 U.S. at 236-237 (considering view of dissenting Justices in determining whether decision was compelled by prior authority). In short, the Apprendi rule was not one which "all reasonable jurists would have deemed themselves compelled to accept." Graham v. Collins, 506 U.S. at 477.

Therefore, the principle adopted in Apprendi is a "new constitutional rule[] of criminal procedure," which, under Teague v. Lane, 489 U.S. at 310, is not applicable to cases on collateral review. The Apprendi rule - that non-recidivism factors that increase the statutory maximum sentence must be found by the jury beyond a reasonable doubt - was not compelled by prior precedent and is therefore a "new rule" for purposes of Teague.

Furthermore, neither of the two narrow exceptions to Teague's non-retroactivity rule

applies to §2255 petitioners. The first exception "permits the retroactive application of a new rule if the rule places a class of private conduct beyond the power of the State to proscribe, * * * or addresses a substantive categorical guarantee accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a class of defendants because of their status or offense." Saffle v. Parks, 494 U.S. at 494 (internal citations, alterations, and quotation marks omitted).

The second Teague exception is limited to "watershed rules of criminal procedure" that implicate the fairness and accuracy of the criminal proceeding. Teague, 489 U.S. at 311-313; see also Sawyer v. Smith, 497 U.S. at 241-242; Saffle v. Parks, 494 U.S. at 495; Butler v. McKellar, 494 U.S. at 416. The Supreme Court explained in Sawyer v. Smith that for a rule to fall within Teague's second exception, it must satisfy two conditions. First, it must improve the accuracy of the proceeding, and second, it must "'alter our understanding of the bedrock procedural elements'" essential to the fairness of a proceeding. 497 U.S. at 242 (quoting Teague, 489 U.S. at 311). The Court has emphasized the narrowness of the exception, stating that "it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that * * * are implicit in the concept of ordered liberty.'" Graham v. Collins, 506 U.S. at 478 (quoting Teague, 489 U.S. at 311). Indeed, the Supreme Court has never held a new rule to fit within Teague's watershed exception. See United States v. Mandanici, 205 F.3d 519, 529 (2d Cir.) ("Beginning with the rule at issue in Teague, the [Supreme] Court has measured at least eleven new rules, or proposed new rules, of criminal procedure against the criteria for the second exception and, in every case, has refused to apply the rule at issue retroactively."), cert. denied, 2000 WL 1203513 (Oct. 2, 2000). The Court has offered as the best illustration of such a rule the right to counsel in felony cases. Saffle v. Parks, 494 U.S. at 495. The Court identified a few

other such basic rights in Teague,[2] but it noted the "unlikel[ihood] that many such components of basic due process have yet to emerge." Teague, 489 U.S. at 313; see also Sawyer, 497 U.S. at 243

The Apprendi rule does not satisfy the second Teague exception. Although the Court's holding in Apprendi stemmed from Fifth and Sixth Amendment principles, the rule does not alter our understanding of the "procedures that * * * are implicit in the concept of ordered liberty." Graham v. Collins, 506 U.S. at 478. Most basically, the rule announced in Apprendi does not affect the determination of a defendant's guilt or innocence. Apprendi's holding that a particular finding must be made by the jury beyond a reasonable doubt rather than by the court under the preponderance-of-the-evidence standard relates only to the applicability of an enhanced statutory maximum sentence, not to the defendant's guilt or innocence of the underlying offense. See Apprendi, 120 S. Ct. at 2362-2363 (fact "that increases the penalty for a crime beyond the prescribed statutory maximum" must be proved to jury beyond a reasonable doubt); United States v. Meshack, 225 F.3d 556, 577 (5th Cir. 2000) ("Apprendi allows only for a sentencing challenge, not a challenge to the underlying conviction").

Because Apprendi does not call into question the validity of the jury's verdict, the Apprendi rule is unlike the rule announced in Cage v. Louisiana, supra, which a number of courts of appeals, including this Court, have found to fall within the second Teague exception. See Tillman v. Cook, 215 F.3d 1116, 1122-1123 (10th Cir. 2000). As the Supreme Court explained in Sullivan v. Louisiana, 508 U.S. at 280-281, a constitutionally defective reasonable doubt

---

[2] The Court stated in Teague that "such rules are 'best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus - that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods.'" 489 U.S. at 313 (quoting Rose v. Lundy, 455 U.S. 509, 544 (Stevens, J., dissenting)).

instruction "vitiates all the jury's findings," so that "there has been no jury verdict within the meaning of the Sixth Amendment." This Court and other courts that have held that Cage announced a new rule that should be applied retroactively to cases on collateral review have relied on the Supreme Court's decision in Sullivan holding Cage errors to be "structural" and not subject to harmless error review. See Tillman, 215 F.3d at 1122. In contrast, the Court has held an error analogous to Apprendi error - the failure to instruct the jury on an element of the offense - to be subject to harmless error analysis. See Neder v. United States, 527 U.S. 1, 15-20 (1999) (failure to submit element of materiality to jury, as required by United States v. Gaudin, 515 U.S. 506 (1995), was harmless error); see also United States v. Eads, 191 F.3d 1206, 1214 (10th Cir. 1999) (even if type of firearm was element of offense under 18 U.S.C. 924(c), district court's treatment of that element as sentencing factor was subject to harmless error analysis) (overruled on other grounds by Castillo v. United States, 120 S. Ct. 2090 (2000)), cert. denied, 120 S. Ct. 2663 (2000). Likewise, courts of appeals have uniformly held that the rule adopted in Gaudin does not fall within the Teague exception for watershed rules. See United States v. Mandanici, 205 F.3d at 529-531; Bilzerian v. United States, 127 F.3d 237, 241 (2d Cir. 1997); United States v. Shunk, 113 F.3d 31, 37 (5th Cir. 1997); United States v. Swindall, 107 F.3d 831, 836 (11th Cir. 1997). As the Fifth Circuit explained in Shunk, "one can easily envision a system of 'ordered liberty' in which certain elements of a crime can or must be proved to a judge, not to the jury." 113 F.3d at 37.

The Supreme Court has not issued any post-Apprendi decision that explicitly or implicitly makes the Apprendi rule retroactive to cases on collateral review. In addition, as explained below, it is far from clear that the Apprendi rule should be applied retroactively under Teague, and it is therefore unlikely that the courts of appeals will be uniform in their resolution

of the retroactivity question.

The Supreme Court has made clear that "[i]t is not enough under Teague to say that a new rule is aimed at improving the accuracy of trial. More is required." Sawyer v. Smith, 497 U.S. at 242. Sentencing practices prior to the adoption of the Apprendi rule provided considerable protection for the interest in accurate sentencing determinations. The government was required to give fair notice of sentencing factors (such as drug quantity under the federal drug statutes), and those factors were determined by a neutral fact-finder after a sentencing proceeding at which all parties had the opportunity to present evidence and argument. That requiring a jury finding under the beyond-a-reasonable-doubt standard may result in greater accuracy does not mean that permitting sentencing findings to be made by a judge by a preponderance of the evidence is incompatible with fundamental fairness. Indeed, the Apprendi Court specifically endorsed the practice of judges making such findings in determining sentences within the statutory maximum, explaining that nothing in the constitutional history on which the Court relied "suggests that it is impermissible for judges to exercise discretion - taking into consideration various factors relating both to offense and offender - in imposing a judgment within the range prescribed by statute." 120 S. Ct. at 2358.

In sum, the procedural rule announced in Apprendi was a "new rule" within the meaning of Teague, and neither of the two exceptions to Teague's principle of non-retroactivity applies.

### III. THERE WAS NO PLAIN ERROR

In United States v. Swatzie, 228 F. 3d 1278 (11th Cir. 2000), a defendant was convicted at trial of possession with intent to distribute cocaine and he was sentenced to life in prison. No quantity of cocaine had been charged in the indictment. The defendant did not object to the indictment or the jury instructions, nor did he request a special verdict form. At sentencing, he

challenged the quantity of the drug in issue in "conclusory fashion" and the Eleventh Circuit claimed the challenge did not "create a real dispute." Swatzie, 228 F. 3d at 1283. On appeal, Swatzie raised an Apprendi claim which the Court rejected. The Eleventh Circuit found that Swatzie could not satisfy all the elements of the plain-error test. Swatzie, 228 F. 3d at 1282. Additionally, the government had given the defendant pre-trial notice that the statutory sentencing range was "imprisonment from ten years to life." Id. at 1283. Taking all these factors into account, the Court refused to overturn Swatzie's conviction or sentence. The Court found that because the evidence of this element (drug quantity) was "overwhelming," a reversal of judgment, given these circumstances, would "bestir the public to ridicule the judicial process." Swatzie, 228 F. 3d at 1284.

Similarly, in the instant case, Coleman did not object to the form of the indictment or object to the jury instructions with regard to this issue, nor did he request a special verdict form. The government gave the defendant pre-trial notice of the sentencing range in its penalty certification. Additionally, the government presented overwhelming evidence at trial and sentencing that the defendant conspired to aid and abet the distribution of more than 5 kilograms of cocaine. (Indeed, the defendant himself stated on audio-taped recordings that cocaine was being brought in by the "truckloads.") As in Swatzie, there was no error which affected Coleman's substantial rights.

## IV. REMEDY

Should this Court determine that Apprendi should be applied retroactively to the petitioner, or there was plain error and the petitioner has suffered substantial prejudice, the remedy would not be a new trial, but rather a new sentencing hearing. Under this Circuit's reasoning in United States v. Rogers, 228 F. 3d 1318, 1328 (11th Cir. 2000), Coleman's remedy

would be a resentencing in which his statutory maximum would be twenty years <u>as to each count</u>. Nothing would prevent the district court from resentencing the defendant to consecutive sentences to meet the guidelines range. <u>See United States v. Henderson</u>, 105 F. Supp. 2d 523, 536-37 (S.D. W.V., 2000).

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the petitioner's Motion to Amend the § 2255 Motion.

Respectfully submitted.

HARRY D. DIXON, JR.
UNITED STATES ATTORNEY

*/s/ Carlton R. Bourne, Jr.*

Carlton R. Bourne, Jr.
Assistant U.S. Attorney
S.C. Bar No. 007868

100 Bull Street
Savannah, Georgia 31401
(912) 652-4422

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Supplemental Response to Coleman's §2255 Motion were mailed with adequate postage to the petitioner at the following address:

Keith Coleman, Reg. No. 09587-021
United States Penitentiary
Post Office Box 26030
Beaumont, Texas 77720-6030

Dated: November 28, 2000

*/s/ CR Bourne*

Carlton R. Bourne, Jr.
Assistant United States Attorney
100 Bull Street
Savannah, Georgia 31401
(912) 652-4422