

IN THE UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH, DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| -vs- | ) | CASE NO: CV-400-054 |
| | ) | CR-497-181-01 |
| | ) | |
| | ) | |
| KEITH G. COLEMAN, | ) | |
| Defendant | ) | |
| | ) | |

TRAVERSE IN ANSWER

TO GOVERNMENT'S OPPOSITION

OF AMENDMENT OF EXHIBITS, WITH LAW AND FACTS

IN SUPPORT OF INEFFECTIVE ASSISTANCE

OF COUNSEL CLAIM

**Comes** now Petitioner/Movant, Keith G. Coleman, <u>pro se</u> and in-<u>forma pauperis</u>, in the above titled action requesting this Honorable Court grant leave to file Traverse in Answer, to the Government's opposition, of " Amendment of Exhibits " in support of ineffective assistance of counsel claim. This action is in further support of Title 28 U.S.C. 2255.

**JURISDICTION**

This.....Court has jurisdiction to entertain this motion pursuant to Title 28 U.S.C. 2255. Whereby the movant hereby, herein fully appears.

As a matter of introduction, Petitioner previously filed a "Motion to Amend Title 28 USC 2255," with exhibits facts and law in support of ineffective assistance of counsel claim.

The government recently responded in opposition to Petitioner's claim. However, for the reason that follows, the government's opposition is without merit, and cannot prevail.

In brief, the Petitioner proposed his amendment thereto attacking his conviction as well as his sentence on this ground (1) ineffective assistance of counsel. In addition to stating counsel's unreasonable incompetence, Petitioner made clear that counsel's omission of acting as an "ineffective advocate" had a substantial effect on the outcome of the proceedings. Thus counsel's omission of researching the record, conducting legal research and failure to understand the law, deprived the Petitioner of potential defenses, as well as a fair trial.

On the other hand, in the government's response in opposition to the "Motion to Amend Exhibits." It appears that the government has "mischaracterized" Petitioner's claim. Thus, Petitioner will again clarify the subjects of counsel's errors, substantiating that the government contentions is without merit, defeated by case law, and facts. Petitioner prays this court construe legal analysis liberally; see **Haines v. Kerner**, 404 US 519, 520, 92 S.Ct. 594, 595.

Referring to the record (Government's Response/Opposition), the government states in sum:

2

"Coleman 2255 motion dealing with prosecu-
torial misconduct, government overreaching,
and entrapment, as well as the court's drug
quantity assessment at sentencing, were
addressed and resolved adversely to Coleman
in his direct appeal."

Petitioner's response:

The government failed to address the issue of the amendment
of exhibits, hence failing to refute Petitioner's claim of inef-
fective assistance of counsel. The government cites no authority
to defeat the claim, nor does the government present any evidence
to show that the ineffective assistance of counsel claim or
subjects of counsel's errors were addressed or resolved on appeal.
Although the government attempts to prevail on procedural bars,
stating that the subject of counsel's errors were decided
adversely on appeal, yet there is nothing in the record to show
counsel's conceded to her own ineffectiveness; see **Page v. United
States, 884 F.2d 300 (7th Cir. 1989)**, thus the issue is cognizable
under 2255 and these issues were not raised on appeal.

However, counsel did list "entrapment" as an issue in her
appellate brief, but listing an issue does not preserve them; see
**Terry v. Reno, 99 F.3d 664 (5th Cir. 1996)**. Counsel should have
briefed the reviewing court on the issue, supported by evidence
and case law, in this circuit. Even if counsel could not succeed
in making substantial showing of entrapment, there was over-
whelming evidence of a "prima facie" showing of entrapment, hence
the convicting court erred in not instructing the rule of
"entrapment" to the jurors. Counsel never argued in her extended

3

brief that this court erred in not instructing the jurors on entrapment, or fundamental fairness defense.

On the other hand, counsel failed to investigate alternate lines of defenses which constituted ineffective assistance of counsel; see **Miller v. Wainwright**, 798 F.2d 426 (11th Cir. 1986) such as "overreaching," "outrageous government misconduct," "sentence entrapment," "double jeopardy," or special verdict, at pre-trial, trial, appellate review.

Bolstering this argument, this circuit likewise held in **Goodwin v. Balkcom**, 684 F.2d 794 (11th Cir. 1982), trial counsel's lack of pre-trial investigation which deprive defendant of potential defense, constituted ineffective assistance of counsel, as in the case at bar. Counsel should have moved this court for dismissal of indictment, for failure to charge an offense at pre-trial; see **United States v. Osiemi**, 980 F.2d 344, 345 (5th Cir. 1995) (claim that indictment fails to state offense challenges jurisdiction of convicting court and is not waived under 2255 by failure to raise issue on direct appeal). This defect is non-waivable and non-defaultable; they are properly remedied—indeed, they must be remedied—upon 2255 review. See **United States v. Harris**, 149 F.3d 1304 (11th Cir. 1999) (this court held: the court does not have jurisdiction to impose enhanced sentence, simply because defendant failed to object to the enhancement on jurisdictional grounds at trial or on appeal). See also precedent case law, **Meachum v. United States**, 626 F.2d

503 (5th Cir. 1980)[1].

Similarly, the **Meachum** court is an exact resemblance of the case at bar. **Meachum** court refused to entertain any post proffer of evidence, when it was clear that the charges did not state an offense; **Meachum** at 508. Another similar case on point with this conclusion, **U.S. v. McGhee**, 854 F.2d 905.

For instance, in the **McGhee** court, "county sheriff made telephone calls to undercover narcotics agent in an "attempt" or effort to assist them in the distribution of what he believed to be cocaine. The indictment charged the defendant with "attempt" to facilitate[2] the possession and distribution of cocaine. The court held: "this does not allege an offense under 846." "One cannot attempt to facilitate a drug transaction." In the instant case the Petitioner is charged with "attempt" to aid and abet the distribution of cocaine, in violation of 846. **McGhee** court is on point, and the same conclusions of law should apply in this case, a replica of the **McGhee** court.

For example, under legal analysis of definitions of statutes and distinct quantum of proof, the charges of "attempt" to aid and abet the distribution of cocaine are "contradicting in terms" within the same counts, duplicious and does not amount to an offense.

---

[1]Prior to October 1, 1981 former Fifth Circuit holdings are binding in this 11th Circuit.

[2]In Black Law Dictionary there is no distinction between "facilitating" a crime or aiding and abetting a criminal offense. Both require the same quantum of proof.

Simply put, "attempt" makes clear to the accused, there must be failure of the ultimate design, or consummation of the offense. But "contradicting in terms" in the same counts as "attempt" is the "aiding and abetting" offense, which requisite is: that the same criminal offense must be consummated or completed by someone. There is no authority that supports such a creative, hybrid of an offense by the government. One cannot be convicted of an incompleted crime, whom object of the "attempt" requires completion of the criminal offense. See **United States v. Superior Supply Inc.**, 982 F.2d 173 (reversed). Consequently because the government charged the defendant with "conspiracy" to aid and abet the distribution of controlled substance, without proof of the underlying offense being consummated by someone, the government failed to cure the defect of combining "conspiracy" 846 that does not require an overt act, with "aiding and abetting[3] that *does not exist without one*. Stated another way, "conspiracy" in this case is legally dependent on whether another independent wrong, i.e., aiding and abetting, distribution of cocaine occurred.

If the court were to assume that the necessary element of "aiding and abetting" is that the crime must have been committed by someone for there to be principle liability, the court must first examine whether that crime of distribution had been committed. If the court *concludes* that the target crime had not

---

[3]Aiding and abetting requires the *consummation or completion of the crime by someone.*

been committed, the court must not ignore the question of prin-
ciple liability. Confronted by the potential actions, the govern-
ment renders the court a conclusion, by offering an "attempt to
aid and abet the distribution of cocaine. However, to allow this
language to succeed, would effectively allow the government to
circumvent it quantum of proof. It would allow the defendant to
be convicted of drug distribution crimes without any proof of
distribution. **United States v. Gaudin**, 515 US 506, 510, 115 S.Ct.
2310, 132 L.Ed. 2d 444 (1995), **In re Winship**, 397 US 358, 364
(1970).

In addition, the convicting court expressly and erroneously
instructed the jury that it could convict the Petitioner of
controlled substance distribution crimes, without any proof of
distribution. Petitioner's counsel failed to object to the
court's erroneous instructions. This made the defendant's trial
fundamentally unfair. See **Carella v. California**, 491 US 263
(1989) and **Pope v. Illinois**, 491 US 497 (1987). The convicting
court's jury instructions literally relieved the government of
its burden of proof, requiring Petitioner to subsequently dis-
prove a criminal offense never proven to have occurred, is
prejudicial per se.

In addition counsel failed to contest the omission of an
essential element from the jury charge, constitutes ineffective
assistance of counsel; see **Lombard v. Lynaugh**, 868 F.2d 1475 (5th
Cir. 1989) (reversed), and further failed to object or raise
issues to constructive amendment of the indictment. **Thomas v.
Harrelson**, 942 F.2d 1530 (11th Cir. 1991) reversed and remanded).

For "constructive amendment" of indictment occurs when the jury is permitted to convict defendant upon factual basis that effectively modifies essential element of offense charged, **United States v. Adams**, 778 F.2d 1117 (5th Cir. 1985). Also see **Stirone**, 361 US 212 (1960).

In other words, the government charge "conspiracy" to aid and abet the distribution of cocaine in Count (1) and the remaining counts charged the Petitioner with "attempt" to aid and abet the distribution of cocaine. Under simple legal analysis, Count (1) the necessary and inescapable element is the occurrence of the underlying offense, i.e., "aiding and abetting the distribution of cocaine," the court fails to instruct the jury on the necessary element, yet the offense does not exist without it, lest the offense is unstated.

On the remaining counts, "attempt" to aid and abet the distribution of cocaine, does not charge an offense under 846. This is a structurally defected charge that must fail.

Also; one does not become part of a "conspiracy" by aiding and abetting. See **United States v. Toler**, 144 F.3d 1423 (11th Cir. 1998), distinguishing "aiding and abetting" from "conspiracy," citing **Iannelli v. United States**, 420 US 770, 785, "aiding and abetting" is not equivalent to the conspiratorial agreement; see **United States v. Frazier**, 880 F.2d 887, 886 (6th Cir. 1989) (citation omitted) **cert. denied, US** 1083, 110 S.Ct. 1142, 107 L.Ed. 2d 1046 (1990). Hence both offenses in each count are distinct, and both must meet its requisite quantum of proof, i.e., in a charge of "conspiracy" to aid and abet the distribu-

tion of cocaine, **Winship, supra.** Otherwise the count must fail, as in the instant case.

Should the court allow these charges to stand, because of counsel's less than reasonable performance, would undermine the well-settled principle of a right to counsel. For it is through counsel that the accused secures his right; **Kimmelman v. Morrison**, 477 US at 377 (1986).

To allow the two distinct charges in the same count to prevail would pervert and underscore, the Congressional intent of both statutes, and relieved the government of its burden of proof on the charge offense, thus not requiring the government to meet the requisite quantum of proof to substantiate the underlying offense. In addition, the jurors could not have come to the conclusion, absent the occurrence of the underlying offense, that the government met its burden of proof. Hence, the structurally defective charge inevitably cause the possibility of less than a unanimous jury verdict on the charged offense. **Davis**, 411 US 233. This defect reaches violations of the Fifth Amendment's right to notice of the charges against the accused; **United States v. Adesida**, 129 F.3d 846, 849 (6th Cir. 1997) cert. denied, 118 S.Ct. 1688 (1998), **United States v. Schlez**, 122 F.3d 944, 980 (11th Cir. 1997), **Russells v. United States**, 369 US 749 (1962), as well as rights to a unanimous verdict. **Davis, supra.** Counsel's failure to contest in pre-trial or reserve them on appeal cause the Petitioner to suffer irreparable harm, as well as constituting her ineffectiveness. In short, the jurors were given no standard of proof to require the government to meet in this case, and

9

counsel requested none. Petitioner was convicted without any proof of any criminal offense.

Finally, counsel failed to research the record i.e., grand jury transcripts and analyze the charges considered by the grand jury (page 3, lines 19-25 and page 4, lines 1-4) as compared to those in the indictment. It is clear from the record, the grand jury did not state a "conspiracy" or "attempt" to violate the drug laws to which they apply, see **Meachum**, 626 F.2d at 508. Yet counsel never challenged these pertinent issues, in pre-trial or trial, or appellate review. Counsel's omission of acting as an "effective active advocate" and cummulative errors, makes eminently clear, counsel's performance was below prefessional norms and less than reasonable, the first prong of **Strickland**, 466 US at 687.

The right of an accused to counsel is beyond question a fundamental right. See e.g. **Kimmelman v. Morrison**, 477 US 365 at 377 (1986); **Gideon v. Wainwright**, 372 US 335, 344 (1963) "without counsel the right to a fair trial itself would be of little consequence for it is through counsel that the accused secures his other rights." **Kimmelman**, supra. The constitutional guarantee of counsel, however, cannot be satisfied by mere retention or appointment of counsel, **Id**. "An accused is entitled to be assisted by an attorney whether retained or appointed, who plays the role necessary to ensure that the trial is fair." **Strickland v. washington**, 466 US 665, 668 (1984).

In other words, the right to counsel is the right to effective assistance of counsel e.g. **Strickland**, 466 US at 486.

Furthermore, under the second requisite, the court must determine whether the deficient performance of counsel prejudiced the defendant's case. To satisfy the prejudice prong of the test, a defendant need not show that, but for counsel's errors, the outcome of the proceeding would more likely than not have been different, **Strickland**, 466 US 493; **Code v. Montgomery**, 799 F.2d 1481, 1483 (11th Cir. 1986).

Rather, a defendant must only show that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a "probability sufficient to undermine confidence in the outcome," **Strickland**, 466 US at 694 (emphasis added). "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome, **Id.** at 694.

Furthermore, the Supreme Court has recognized that a single, serious error of counsel may violate a defendant's constitutional right to effective assistance of counsel, **United States v. Cronic**, 466 US 648, 657, n. 20 (1984). See also **Murray v. Carrier**, 477 US 478, 496 (1986). Counsel should have moved for dismissal of the structurally defective indictment for failure to state an offense, irrespective of any post-proffer of evidence by the government. The Supreme Court has expressly stated: "even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt," **Cronic**, **supra**. Because

11

counsel failed to move for dismissal of uncharged offenses, the government's case was not subjected to the meaningful adversarial testing which is required under our system of justice. Counsel's omission of moving for dismissal in pre-trial allowed the Petitioner to be "held accountable" for "infamous crime" not charged. This was prejudicial per se, **Stirone**, 361 US 212 (1960).

Again, there is no procedural bar to this claim of ineffective assistance of counsel; in fact, the proper vehicle for claim of ineffectiveness is Motion 2255, not direct appeal, where trial record lacks reason behind counsel's tactical decision. **U.S. v. McKinney**, 143 F.3d 325, 330 (7th Cir.) cert. denied, 119 S.Ct. 269 (1998). Because trial counsel is not required to raise her own ineffectiveness on appellate review, **Page**, 884 F.2d 300 (7th Cir. 1989), Petitioner does not waive this right.

On page two of the government opposition entitled: **Apprendi**, the government states:

> "Coleman unsuccessfully challenged the drug quantity attribution figure on direct appeal. He now attempts to assail his sentence on the ground that factors affecting his sentence—— drug quantity and two sentencing guidelines enhancements (obstruction of justice and role in offense)——were not alleged in the indictment and proved beyond reasonable doubt. Coleman's claim should be denied.

In response: (The government's contentions are without merit).

In light of **Apprendi** supra, it is without question, that the

12

aggravating circumstances alleged in Petitioner's sentencing count i.e. (obstruction of justice, role in offense, abuse of trust, leadership, etc.), which <u>increased</u> the maximum statutory penalty, cannot be constitutionally accepted in American Courts as sentencing factors, held under the preponderance of the evidence standard by a trial judge.

For the Constitution requires that any fact increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction must be submitted to a jury and proved beyond reasonable doubt. This holding was fore-shadowed in **Jones**, 119 S.Ct. at 1229, **Castillo**, 2000 WL 7112805.

Petitioner preserved this right by challenging it on appeal, as conceded by the government in the opposition. Notwithstanding drug amounts were subject only to the preponderance of the evidence standard, by a trial judge. **Apprendi** court held this was a potentially dangerous situation, where the amount of drugs could be based solely upon the uncorroborated testimony of a cooperating witness, or relegated to a sentencing factor, rather than the trier of fact (jury).

In addition, the convicting court applied a lower standard of proof, than required by the Constitution on the facts that increased the statutory maximum. This court as most courts used, the preponderance of the evidence standard, pre-**Apprendi**, **Jones**, and **Castillo**. In fact the Supreme Court stated that it was uncon-stitutional for legislature to removed from the jury the assess-ment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. Such as drug quantities

13

and aggravating circumstances, ("tail which wags the dog,"), (role in offense, obstruction of justice, abuse of trust, leadership, etc.). Thus the Defendant suffer extreme prejudice from an unconstitutional procedure by this court, that he previously objected to at sentencing, now Petitioner position has been re-enforced by the Supreme Court in **Apprendi**. Thus this court on its own motion has the authority to recall mandate, or revocate the conviction to correct its own incorrect procedure.

Although, courts followed the incorrect procedure, of the judge being the trier of fact of penalties that increased the maximum statutory penalty. The **Apprendi** decision reviewed the course of history of felony sentencing law from its earliest roots in England through recent other decisions of the Supreme Court, and rejected that procedure.

The government further argues:

(A) "**Apprendi** claims are not cognizable on collateral attack."

(B) "Coleman's **Apprendi** claim does not survive **Teague** analysis.

(C) "Coleman must show cause and prejudice.

Petitioner will clearly substantiate his claim in "brief" to the above (A, B, C) opposition of the government, with a clear showing, that the government argument is without merit, and does not defeat Petitioner's claim.

The government contends that the Petitioner's proposed amendment to his **Section 2255** which is also predicated upon

14

**Apprendi v. New Jersey**, 120 S.Ct. 2348 (2000) is barred. Government's contentions are meritless. Recently, in **Doe v. United States**, ___ F.Supp. 2d ___, 2000 WL 1217850 (D.N.J. Aug. 23, 2000), a petitioner who timely filed a petition to vacate his sentence pursuant to 28 U.S.C. 2255 moved for leave to amend his petition on the basis of **Apprendi, supra**. "Unlike" in the instant case, petitioner **Doe** even exceeded the general limitation period of **Section 2255**, which is one year from the date on which the judgment of conviction becomes final. Nonetheless, that court granted the motion to amend and held that Petitioner **Doe**'s **Apprendi** claim was not time barred, and allow the petition to succeed.[4]

**Apprendi** is clearly a recent decision of the Supreme Court newly recognizing the right to an indictment and jury determination on facts that increase the prescribed range of penalties to which a criminal defendant is exposed. The Supreme Court stated the **Apprendi** rule as follows:

---

[4]It is noteworthy that, on August 16, 2000, in **United States v. Rene Vasquez-Venegas**, Case No. 96-18070-CIV-KING (S.D. Fla.), the Honorable Magistrate Judge Barry Garber, in an ore tenue order granted a petitioner's motion for leave to amend his **Section 2255** motion which was filed in 1996, so he could include an **Apprendi**-based claim also relying on the new rule of law announced in **Apprendi**. In **Harris v. United States**, ___ F.Supp. 2d, 2000 WL 1641073 (D. N.J. Nov. 1, 2000) the United States District Court for the District of New Jersey held that a claim based on the rule announced in **Apprendi** can properly be raised in a motion pursuant to 28 USC 2241. Challenging the lawfulness of his sentence. In another favorable case, the United State District Court for the District of Massachusetts held that the new rule in **Apprendi** should be applied retroactively to cases on collateral review, **Parise v. United States**, ___ F.Supp. 2d, 2000 WL 1611999 (D. Conn. Oct. 25, 2000).

"It is unconstitutional for legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."

Apprendi, 120 S.Ct. at 2362-63. In United States v. Murphy, ___ F.Supp. 2d ___, 2000 WL 1140782 at 13 (D. Minn. Aug. 7, 2000), where a petitioner raised an Apprendi claim in his motion to vacate his sentence filed pursuant to 28 USC 2255, the court held that Apprendi announced a "sweeping new requirement" that is "of watershed importance." Similarly, the dissent in Apprendi pointed out that Apprendi "will surely be remembered as a watershed change in constitutional law." See Id. at 2380 (O'Conner, J., dissenting).[5]

---

[5]Notably, in determining when a right is newly recognized for purpose of the Antiterrorism Effective Death Penalty Act of 1996 ("AEDPA"), it may be instructive to look at the new rule analysis employed in Teague v. Lane, 489 US 288 (1989) for guidance. See In re Green, 144 F.3d 384, 387 (6th Cir. 1998); Bannister v. Bowersox, 128 F.3d 621, 622-623, (8th Cir. 1997) (concluding Teague analysis is "instructive.") Under Teague, a case announces a "new rule" (1) when "it breaks new ground or imposes a new obligation" on the government; or (2) "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 489 US at 301. Stated another way, a ruling is "new" for purposes of Teague if susceptible to "debate among reasonable minds." Butler v. McKellar, 494 US 407, 415 (1990), as to which there could have been "reasonable, good-faith interpretations of existing precedents" deciding the question the opposite way, Id. at 414. Indeed, in considering whether a rule was "new," the court may consider the fact of a split in the lower courts on the question. See Id. 494 US at 415

Furthermore, **Apprendi** has been "made retroactively applicable to cases on collateral review." See 28 USC 2255(3). Indeed, recently in **United States v. Murphy**, ___ F.Supp. 2d ___, 2000 WL 1140782 (D. Minn. Aug. 7, 2000) the court expressly held that **Apprendi** applies retroactively to cases on collateral review under 28 USC 2255.

In addition, both Supreme Court and Eleventh Circuit precedent mandate that **Apprendi** be retroactively applied to cases on collateral review. The Supreme Court in **Teague v. Lane**, 489 US 288 (1989), held that a right which has been newly recognized by the Supreme Court is not to be applied retroactively on collateral review unless it falls within one of two exceptions: (1) the new rules places certain kinds of primary conduct beyond the power of the criminal law making authority to proscribe, or (2) the rule requires the observance of "those procedures that...are 'implicit in the concept of ordered liberty.'" **Teague**, 489 US at 305-310 (citations omitted). A rule falls within the second **Teague** exception if it is a "watershed rule of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding that alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding." **West v. Vaughn**, 204 F.3d 53, 59-60 (3d Cir. 2000) (internal

---

(rule is new if there is a "significant difference of opinion on the part of several lower courts had considered the question previously"). Applying this standard, **Apprendi** overrules at least one Supreme Court precedent. See **Id.** at 2362 (noting a logical application of our reasoning today might require the conclusion the **Almendarez-Torres v. United States**, 523 US 224 (1998), was "incorrectly decided").

quotations omitted) (emphasis on original). To qualify under the second **Teague** exception, "the new rule must satisfy a two-pronged test: (1) it must relate to the accuracy of the proceeding; and it must alter "our understanding of the 'bedrock procedural elements' essential to the fundamental fairness of a proceeding." **Nutter v. White**, 39 F.3d 1154, 1157 (11th Cir. 1994) (quoting **Sawyer v. Smith**, 487 US 227, 242 (1990). In **Nutter**, supra, the Eleventh Circuit held that **Cage v. Louisiana**, 498 US 39 (1990) (per curiam), where the jury trial guarantee and the reasonable doubt standard were at issue, fell within the second **Teague** exception because it "guards against conviction of the innocent by ensuring the systematic accuracy of the criminal system." **Nutter**, 39 F.3d at 1157 (emphasis added). Moreover, **Cage** satisfied the "fairness" prong of **Teague**'s second exception as it "implicated a fundamental guarantee of trial procedure because use of a lower standard of proof frustrates the jury-trial guarantee." **Id.** at 1158.

Like **Cage**, the jury-trial guarantee and the reasonable doubt standard were also at issue in **Apprendi**. And, like **Cage**, the newly recognized right in **Apprendi** falls within the second **Teague** exception. First, the **Apprendi** court noted the importance of the reasonable doubt standard to the accuracy of a criminal proceeding. It found that this standard is constitutionally required in order "to reduce the risk of imposing deprivation of liberty erroneously." **Apprendi**, 2000 WL 807189-10.   Moreover, the court found that this standard is critical to the fairness of the proceeding. As **Apprendi** noted, "at stake in this case are constitu-

18

tional protections of surpassing importance: "the right of a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond reasonable doubt." **Apprendi**, 2000 WL 807189-7. Indeed, the **Apprendi** court concluded that the New Jersey procedure challenge in **Apprendi** was "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." **Id.** at 17. **Apprendi**, therefore clearly falls within the second **Teague** exception and applies to cases on collateral review.

### THE GOVERNMENT RELIANCE UPON IN RE JOSHUA, ___ F.3d ____, 2000 WL 1227966 (11TH CIR. AUG. 30, 2000) IS MISPLACED.

The government claims "the subsection of 2255 does not allow the defendant to succeed on **Apprendi** because the Supreme Court has not expressly "made" these rights retroactively applicable to cases on collateral review. In support of this claim, the government relies upon **In re Joshua**, ___ F.3d ____ 2000 WL 1227966 (11th Cir. Aug. 30, 2000) where the court denied a Section 2255 petitioner's application for leave to file a second or successive Section 2255 motion.

The government's reliance upon **In re Joshua**, **supra**, however, ins misplaced because the issue before this court of Section 2255 i.e. "supplement or amending" was not at issue in **In re Joshua**. Rather, in **In re Joshua**, the court was considering a different provision of Section 2255 which delineates the circumstances under which a second or successive Section 2255 motion can be

filed. That provision of **Section 2255** provides, inter alia, as follows:

> A second or successive motion must be certified as provided in **Section 2244** by a panel of the appropriate Court of Appeals to contain—
>
> A new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.
>
> (emphasis added)

Notably, although the provision governing second and successive applications which was at issue in **In re Joshua** requires that the new rule be "made retroactive to cases on collateral review by the Supreme Court," the statute provisions contained in 2255 on **Rule 15(A)** which is at issue in this case does not require that the new right be expressly made retroactively applicable by the Supreme Court. It only requires that the right be "newly recognized by the Supreme Court" and be "retroactively applicable to cases on collateral review.

Recognizing this distinction, the Court in **Triestman v. United States**, 124 F.3d 361, 371 n. 13, (2nd Cir. 1997), held that, under 2255 (the limitation period begins to run on the date of the decision in which the Supreme Court first recognizes the new right and this date may be different from the date the Supreme Court expressly makes the right retroactive to cases on collateral review.

Notably, if Congress had intended that there be no distinction between the newly recognized right retroactively applicable to cases on review, it could have expressly included such language in **Section 2255** or **Rule 15(A)**, as it did in the second and successive application provision of **Section 2255**, which was at issue in **In re Joshua**. See **Hohn v. United States**, **524 US 236 (1998)** (where Congress includes particular language in one section of its statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion) (quoting **Bates v. United States**, 522 US 23, 29-30 (1997); **California Cosmetology Coalition v. Riley**, 110 F.3d 1454, 1460 (9th Cir. 1997) ("We must presume that Congress acts with the deliberation, rather than by inadvertence, when it drafts a statute.")

There is no basis for concluding that an initial or supplement provisions of **Section 2255**, and the second or successive applications provision of **Section 2255** which are two differently-worded provisions added by the AEDPA were meant to have identical meanings and application. The second or successive application carries a stricter and higher standard, than the initial 2255 or supplemental pleadings. In fact the supplemental to the initial pleading or amendment to habeas, carries such a broad application, Congress expressly stated, "When justice so requires." **Rule 15(A)**.

In short, unlike the second or successive application at issue in **In re Joshua**, the amended pleading does not require that the Supreme court declare that **Apprendi** is retroactive to cases

on collateral review before a petitioner can rely upon it. Accordingly, **In re Joshua** is inapposite.

The government contends that the Petitioner has no cause for not raising his **Apprendi** claim earlier and cannot show prejudice from the failure of the government to allege drug quantity in the indictment and submit the issue of drug quantity to the jury for a determination of that issue beyond reasonable doubt. This contention is without merit.

Jurisdictional defects cannot be procedurally defaulted by absence of cause and prejudice. **Harris v. United States**, 149 F.3d 1304 (11th Cir. 1998). In the same way that the district court in **Harris** lacked jurisdiction to enhance a sentence unless the government strictly complied with the procedural requirement of 21 USC 851(A), the district court here lacked jurisdiction to enhance the petitioner's sentence without the necessary allegations as to drug amount in the indictment and proof of amount beyond a reasonable doubt at trial. See **Apprendi**, supra; **United States v. Rogers**, ____ F.2d ____, 2000 WL 1451907 (11th Cir. Sept. 27, 2000) (holding that drug quantity is **Section** 841(b)(1(A) and **Section** (b)(1)(b) cases must be charged in the indictment and proved to a jury beyond a reasonable doubt in light of **Apprendi**.

Because, under **Harris**, **supra**, jurisdictional defects are non-waivable and non-defaultable, they are properly remedied—indeed they must be remedied—upon **Section 2255** review. See **Harris**, **Id.** at 1308 (holding that, because jurisdictional defects cannot be procedurally defaulted and the district court did not

22

have jurisdiction to impose an enhanced sentence, relief under **Section 2255** must be granted although the defendant failed to object to the enhanced sentence at trial or on appeal).

In light of **Harris, Id.**, this court need not address the government's claim "any error due to the sentencing court's determination of drug quantity would be deem harmless."

Assuming arguendo, that the accused had to show cause and prejudice, however, it is noteworthy that there are two possible approaches to this issue, each of which is satisfied in this case. First, is simply to weigh the extra sentence imposed upon the petitioner beyond that permitted by the jury's verdict. The jury convicted the Petitioner for alleged violations of **Section 841(A)(1)** with no specification of the amount of drugs involved. Many additional years of imprisonment were imposed beyond that authorized by the jury's verdict which easily affected the Petitioner's substantial right, and harmed him. See, e.g. **United States v. Anderson**, 201 F.3d 1145, 1152 (9th Cir. 2000) ("A larger sentence undoubtedly affects substantial rights").

A second approach would be to treat drug quantity as to equivalent of an element of the offense on which the jury was not instructed. In that case, in order to validate Petitioner's sentence despite the **Apprendi** error, the Court would have to be able to conclude "beyond reasonable doubt" that "a rational jury would have found the defendant guilty absent the error." **Neder v. United States**, 527 US 1, 119 S.Ct. 1827, 1838 (1999). There are two potential methods for making this determination.

First, since the **Apprendi** issue involves the failure of a

jury to make a requisite findings, the error could be deemed harmless if the Court could determine that the jury necessarily made those findings notwithstanding the omission. See **United States v. Brown**, 202 F.3d 691, 699-700 (4th Cir. 2000).

Second, "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested <u>and</u> supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instructions is properly found to be harmless." **Neder**, 119 S.Ct. at 1837 (emphasis added).

Where, as here, the drug quantity element was contested, the error cannot be deem harmless if "there is evidence upon which a jury could have reached a contrary finding." **Brown**, at 701 (emphasis added), citing **Neder**, 119 S.Ct. at 1838. The error in this case cannot be deemed harmless under either of these methods.

First, the jury was never required to find drug quantity in reaching its guilty verdict. The guilty verdict, therefore, cannot be construed as including a finding that was never required to be made by the jury.

Second, the error cannot be dismissed as harmless since drug quantity was at all times <u>contested</u> and this case was a "dry conspiracy." No cocaine was possessed or constructively possessed by the accused. Nor was there any foreseeability to possess cocaine in the total control of the government.

The government further states:

(D) The evidence at trial regarding Coleman's involvement

> "Coleman cannot show prejudice because the
> district court correctly determined the
> quantity of drugs for which he was account-
> able (and for which he would have been
> properly held accountable had the government
> known, at the time of indictment and trial,
> that it was required to allege and prove drug
> quantity).

The government goes on to state:

> Given the strength of this evidence, had the
> law at the time of Coleman's trial and con-
> viction required an explicit jury finding as
> to drug quantity, any reasonable juror would
> have found Coleman guilty of conspiracy to
> aid and abet the distribution of at least
> five kilograms of cocaine."

Petitioner's response; This opposition by the government is also without merit, and misplaced. First, Petitioner need not address, neither does this court need to belabor, in establishing Petitioner's involvement in a government scheme, in which it failed to charge an offense, as well as alleged an unstated offense, which terminates the convicting courts jurisdiction to adjudicate the case, irrespective of involvement. For no American courts allows the prosecution to be relieved of its responsibil- ity to "charge an offense," or evasively circumvent, the **U.S. Constitution's Fifth Amendment**, by a post-proffer of evidence. Evidence is immaterial, when the indictment is insufficient to prosecute.

Yet assuming arguendo, even under the pre-**Apprendi** claims, in reference of drug quantities. USSG 2D1.1(A)(3)(C), 2D1.1 comment (n:12) requires an assessment of the conduct of others for which a defendant is accountable under, Section 1B1.3. Section 1B1.3 of the guidelines requires that a defendant be held responsible for all reasonably foreseeable acts of co-conspirators taken in furtherance of any common plan or scheme of which the defendant offense conviction is a part, including jointly undertaken activity.

In the instant case, it is well-settled "no drugs" were possessed or distributed by defendant's in this case. Thus to conform to the requisite of 1B1.3. First this court must examine the charge, whether there was only conspiracy to commit the act; to be held accountable for the completion of the act, and drugs involved. Or whether there was an additional charge requiring more than just the unlawful agreement of "attempt" to commit the offense.

Clearly, there was an additional charge within the same count, i.e. "aiding and abetting." Now the quantum of proof takes a different turn, in all the counts that this charge is included in. Hence the government must show proof of the consummation of the ultimate design by the principle, in order to hold the Petitioner accountable for principle liability in furtherance of the common scheme of which the defendant offense conviction is a part, otherwise there is an unstated offense charged in the indictment, and the counts must fail.

In addition, to hold the Petitioner liable for reasonable

foreseeable activity of co-conspirators. The co-conspirator must be sufficient of a charge, even if not identified or convicted, for one cannot be aider and abettor alone; see **United States v. Sweig**, S.D.N.Y. 1970, 316 F.Supp. 1148. Neither can a defendant be held liable absent proof that a criminal offense was committed by someone. **United States v. Lopez**, N.D. Cal. 1987, 667 F.Supp. 1083, affirmed 885 F.2d 1428, cert. denied, 110 S.Ct. 748, 493 US 1032, 107 L.Ed. 2d 765.

Simply put, the only allege co-conspirators who consummated the alleged offense, were government agents; the only individual in possession of alleged drugs, were government agents. Yet, the agents cannot serve as a party to a conspiracy or be an allege principle in criminal offenses, neither can the Petitioner share any criminal intent with an agent.

Thus the Petitioner cannot be attributed with drugs from a conspiracy that cannot exist. Even if the government concludes that the Petitioner, and defendants aided each other, the question is: To what extent? And the answer would be inapposte: to aid the government in a crime, it created against itself. Furthermore, it is inconceivable to attribute drug amounts to the accused in an alleged conspiracy that cannot exist.

In furtherance of the government's opposition, the government states:

> When the cooperating witness first met Cole-
> man, he told Coleman that "ki's" (kilos) of
> cocaine were coming into Savannah.

In response:

Contrary to the government's contentions, there was no recorded conversation of the initial meeting. Neither did the government produce one. Only the initial phone call of CI Walter Heyward relentless attempting to communicate with Petitioner after several unsuccessful attempts (see evidence of initial contact with CI). Yet the meeting was not recorded, neither could this essential piece of evidence be located.

It is well-settled that no specific drug amounts were nego-tiated in the government's scheme. Assuming arguendo, it is this circuit's law and precedent, that even when there are negotiations of amounts of drug "unlike" in the instant case. Absent proof of ability to possess, distribute or deliver the said amount, negotiations are insufficient to prove capability of defendant to be held accountable. **United States v. Crespo**, 982 F.2d 483 (11th Cir. 1993). And the court may not rely on speculation to measure an amount of cocaine for sentencing purpose. **United States v. Riley**, 142 F.3d 125 (11th Cir. 1998). In addition, the necessary requisite of an "attempt" is the apparent possibility of commis-sion, **State v. Stewart**, Mo. App. 537 S.W. 2d 579, 581. Obviously, the possibility of commission, and requisite of it, could not have been met in this case. Thus no drugs should have been attri-buted to Petitioner.

Again, the government states in opposition:

(E)   Even assuming error, Coleman's sentence is still valid.

(F)   **Apprendi** does not support challenge to

28

the sentencing guidelines.

Petitioner's response: Petitioner will combine (E) and (F) meritless opposition.

It is in error for the government to assume, after Petitioner substantiates the defective charging instrument, it could sentence the Petitioner under 841(b)(1)(C) and circumvent the **Fifth Amendment** "indictment clause," the Petitioner alleged in his initial 2255 motion, the indictment failed to allege an offense under **(846) (841)(A)(1).** It further argued that the indictment failed to allege "essential element" i.e., "drug quantity." And counsel fail to brief the court in pre-trial, trial or Appellate Review on the merits of a structurally defective indictment. These defects are indeed jurisdictional, and cannot be cured by resulting to a "catch all" clause of statute, i.e., **841(b)(1)(C).**

The **Fifth Amendment** "indictment clause" states in no uncertain terms, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." **U.S. Const. Amend. V.** This requirement ensures that a Grand Jury only returns an indictment when it finds probable cause to support all necessary elements of an offense. See **United States v. Fern**, 155 F.3d 1318, 1324-1325 11th Cir. 1998).

The failure of a Grand Jury to find probable cause as to every element is not a "technical" deficiency. It is inherently and necessarily prejudicial to a defendant.

29

> This underlying principle is reflected by the
> settled rule in the federal courts that an
> indictment may not be amended except by re-
> submission to the Grand Jury, unless the
> charge is merely a matter of form... "If it
> lies within the province of a court to change
> a charging part of an indictment to suit its
> own notions of what it ought to have been or
> what the Grand Jury would probably have made
> it if their attention had been called to sug-
> gested changes, the great importance which
> common law attaches to an indictment by Grand
> Jury, as a prerequisite to a prisoner's trial
> of crime, and without which the Constitution
> says "no person shall be held to answer, may
> be frittered away until its value is almost
> destroyed."

**Russell v. United States**, 369 US 749, 770 (1962) (citations
omitted). The omission of a crucial element from an indictment is
considered a substantive, jurisdictional defect in the indictment,
requiring reversal without proof of prejudice. See **United States
v. Gayle**, 967 F.2d 484, 485 (11th Cir. 1992) (en banc), cert.
denied, 507 US 967 (1993); **Fern**, 155 F.3d at 1324-1325; **United
States v. Brown**, 995 F.2d 1493, 1505 (10th Cir.), cert. denied,
510 US 935 (1993).

Separate and distinct from the **Fifth Amendment** requirement,
the **Sixth Amendment** requires that the indictment put the defend-
ant on notice of "the nature and cause of accusation." To satisfy
this command, the indictment must, at a very minimum, set forth
every element of the offense and "fairly inform the defendant of
the charge against which he must defend." **Hamling v. United**

30

States, 418 US 87, 117–118 (1974); Fern, 155 F.3d at 1324–25. An indictment's failure to state an offense may be noticed at any time by this court under Fed.R.Crim.P. 12(b)(2). See also United States v. Meachum, 626 F.2d 503, 509 (5th Cir. 1980).

Notably, Apprendi v. new Jersey, 120 S.Ct. 2348 (2000), involved a state hate crimes prosecution. Because the Fourteenth Amendment had not been construed to include the Fifth Amendment right to "presentment of indictment of a Grand Jury," the defend- ant in Apprendi did not assert a constitutional claim based upon the omission of the punishment-enhancing factor from his indict- ment. 120 S.Ct. at 1245 n. 3. Bound by the Fourteenth, he brought his claim merely pursuant to the Fifth Amendment due process clause, and the Sixth Amendment jury trial guarantee. Id.

The Court explained that because of the nature of the claim of Mr. Apprendi had raised it was not addressing the indictment question separately; nevertheless, the Court emphasized that the indictment guarantee had been discussed at length in Almendarez- Torres, a case arising under 8 USC 1326, the court had acknowledged that if a "supposed" sentence-enhancement actually defined a separate crime, "then the government must write an indictment that mentions the additional element." 523 US at 226.

Although the court in Almendarez-Torres ultimately held that "the fact of a prior conviction" was not an element of a separate aggravated offense, it is clear from Apprendi that any other fact besides a prior conviction, which increases a defendant's punish- ment beyond the prescribed statutory maximum, is an element of the offense, and must be alleged in the indictment. See also

31

**United States v. Rebman**, 2000 WL 1209471 #4 n. 1. (6th Cir. Aug. 28, 2000) (recognizing that the indictment in the federal drug case was probably deficient in light of **Apprendi** but that the defendant had not raised the issue).

As explained in Petitioner's Section 2255 motion, the Grand Jury in this case only found violations of "21 USC 846" (see Grand Jury Transcript page 3, lines 19-25 and page 4, lines 1-4), thus Petitioner only had notice of that charge. The indictment did not reference the separate and distinct aggravated offense— a specified quantity of cocaine, obstruction of justice, abuse of trust, role in offense, etc. See most recent, **United States v. Scheele**, No. 99-30388, 2000 WL 1638944 (9th Cir. Nov. 2000) reversed, holding drug amounts should be estimated conserva- tively.

In addition, to the extent that the district court sentenced Petitioner for violations of a different statute—a 841(b)(1)(b) offense of which he was not convicted—the court effected a quasi-constructive amendment of the indictment. A constructive amendment of the indictment is reversible per se without proof of prejudice. **Stirone v. United States**, 361 US 212, 217 (1960) (deprivation of right to be tried only on charges returned by Grand Jury "is far too serious to be treated...as harmless"). **United States v. Weissman**, 899 F.2d 1111 ((11th Cir. 1990) (citing **Stirone**).

Finally, Petitioner makes clear, his claim was not predi- cated on the USSG. And the government "mistakes" his claim. However, to ensure there is no waiver and the government did

announce the issue, Petitioner address it briefly.

Petitioner states nothing in the **Apprendi** opinion, however lends to the conclusion that a judge cannot determine facts that effect the defendant's sentence <u>within</u> the boundaries of a range, <u>within</u> a maximum of twenty years as explicitly provided by 21 USC 841(b)(1)(c), the base-line section. That type of determinate sentencing is still within a judge's discretion, and is the proper definition of the term "sentencing factor" first coin in **McMillan v. Pennsylvania**. On the other hand, **Apprendi** is turn on when these facts <u>increased</u> the a penalty beyond a statutory maximum, and omitted from the charging instrument, as in the Petitioner's case, a violation of **US Constitution's Fifth** and **Sixth Amendment**.

Because, there are several jurisdictional defects in the indictment and counsel failed to move for dismissal in pre-trial on a "structurally defective indictment," the Petitioner suffered grave prejudice and injustice. There are no procedural bars to this claim, and if assuming there is, in **Bousley v. United States**, 118 S.Ct. 1604 (1998) petitioner may overcome procedural default by showing actual innocence, **Jones v. United States**, 153 F.3d 1305, 1308 (11th Cir. 1998) or that ignoring such facts would lead to a fundamental miscarriage of justice; **Frady**, 456 US 152 (1982). It is well-settled, absent the charge, the defendant is "actually innocent" of the penalties on all counts alleging an "unstated offense," and omitted "essential elements."

In sum, the charging instrument is structurally defective, and fail to state an offense against the United States in all

counts, it likewise failed to allege other essential elements, i.e. drug quantities, and aggravating circumstances that increased the maximum statutory penalty.

Among other things, Petitioner's counsel was ineffective, failing to move for dismissal, and research the record, and become familiar with the law that relates to the offenses charged, thus failing to put the prosecution to the adversarial testing required in criminal proceedings by our system of justice.

Counsel's omission of invoking the procedural and substantial safeguards had a substantial effect on the outcome of the proceeding, effectively allowing the prosecution to succeed on convictions of drug distribution crimes, with being required to prove distribution. This made the trial fundamentally unfair, relieving the government of its "burden of proof," and the jurors of the "reasonable doubt" standard; see **In re Winship**, **supra**, **US Const. Amend. VI.**

The prosecution succeeded on a conviction, without adversarial testing, on conduct that was so "outrageous" that it violated principles of fundamental fairness, shocking to the traditional sense of justice, in accordance with the **US Constitution's Fifth Amendment.** Finally this court is without jurisdiction to impose a punishment on an uncharged and unstated offenses, that also omits the essential elements of the crime charged.

It is eminently clear, counsel was ineffective cumulatively,

34

notwithstanding the indictment should have been dismissed, had counsel requested so. Yet, no reasonable jurors could have concluded that the government met its burden of proof, under correct instructions, had counsel requested any. For just as in **Bousley**, **supra**, the Petitioner is "actually innocent," **118 S.Ct. at 1611-12**, of an otherwise "infamous crime" not charged or stated in the indictment, **Stirone**, **361 US at 212**, contrary to the government's contentions there are no procedural bars or defaults to ineffective assistance of counsel claim, or jurisdictional defects, both are to be remedied on collateral attack, when counsel fails to litigate and/or preserve the issue, and they are none waivable. Notwithstanding the Petitioner met the <u>cause</u> and <u>prejudice</u> standard. However, the nature of the error is presumed prejudicial per se, and the accused need not belabor in a standard that always affect substantial right, and could never be presumed as harmless; **Olano**, **507 US at 736**, **United States v. Floresca**, **38 F.3d 706, 712 4th Cir. en banc.** Because the errors amount to structural defects, the question of prejudice is irrelevant, and the "only" relevant consideration is the nature of the error.

**Floresca** then noted the <u>Framers</u> included Grand Jury clauses in the **Bill of Rights**, to protect our citizens against the potential abuse of powers, by the Federal Government. Deprivation of this right would be intolerably unfair. **Id**. 713, 714. **Floresca** similarly found that allowing a conviction upon an "unindicted offense" as in the case at bar, would undermine the integrity of law. It would reverse two hundred years of law as well as

35

**Stirone**'s intolerance of any such conviction, and "gravely threaten the very legitimacy of Federal Tribunals," effectively endangering the public reputation of judicial proceedings.

No court could choose to consciously ignore all that has gone before while simultaneously maintaining the integrity of law. Bolstering this fact, the Supreme Court has determined that the indictment must plead to specific statutory language in each of the charges filed against the defendant, **Neder v. United States**, 527 US 1, 144 L.Ed. 2d 35. And failure to charge or state an offense or essential elements of a crime is by no means a "mere" technicality. **United States v. King**, 587 F.2d 956. Hence, thus far the government has failed to offer any legal authority to dispute counsel's ineffectiveness, or substantiate that the charges in the indictment has met the constitutional standard, nor has the government offered any evidence to rebuttle the claims. Therefore it is fair to assume the Petitioner is correct in his claims and warrants relief, for violations of **Fifth Amendment** of US Constitution, i.e. due process, fundamental fairness, right to counsel, right to unanimous verdict on the charged offense, embedded in the jury trial guarantees. In addition are violations of the **Tenth Amendment** of the **US Constitution**, i.e. "manufacturing jurisdiction" by the government. There can be no doubt Petitioner warrant relief, to prevent a miscarriage of justice, and preserve the integrity of this Honorable Court.

## RELIEF SOUGHT

Accordingly, for all the foregoing reasons, the Petitioner respectfully prays this Honorable Court grant relief in the following: (1) dismiss indictment with prejudice as a "matter of law," or (2) vacate Petitioner's conviction and/or sentence; order retrial herein and grant any other relief to which Petitioner may be entitled.

Respectfully submitted,

15th Nov 2000

**Date**

**Keith Coleman**
Reg. No. 09587-021
PO Box 26030
Beaumont, TX 77720-6030

37

# CERTIFICATE OF SERVICE

I, <u>KEITH G. COLEMAN</u>               , hereby certify that I have served a true and correct

copy of the following:        **TRAVERSE IN ANSWER,(To Government's Opposition)**
**of " Amendment of Exhibits " with law and facts**
**in support of ineffective assistance of counsel**
**claim.**

which is deemed filed at the time it was delivered to prison authorities for forwarding to

the court, *Houston v. Lack*, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation

and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope

addressed to:**(3)Copies**                    **(1) Copy**

| | |
|---|---|
| **Clerk of Court** | **U.S. DEPT. OF JUSTICE** |
| **UNITED STATES DISTRICT COURT** | **U.S. ATTORNEY'S OFC.** |
| **SOUTHERN DISTRICT OF GEORGIA** | **SOUTHERN DISTRICT OF GA.** |
| **SAVANNAH, DIVISION** | **SAVANNAH, DIVISION** |
| **P.O. BOX 8286** | **P.O. BOX 8999** |
| **SAVANNAH, GEORGIA 31412** | **SAVANNAH, GEORGIA 31412** |

and deposited same in the United States Postal Mail at the United States Penitentiary,

Beaumont, Texas, on this ___**15th**___ day of ___**NOVEMBER**___ 2000.

**KEITH G. COLEMAN 09587-021**
U.S.P. Beaumont
P.O. Box 26030
Beaumont, Texas 77720-6030