UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH, DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | CASE NO: CV-400-054 |
| | ) | CR-497-181-01 |
| | ) | |
| KEITH G. COLEMAN, | ) | |
| Defendant, | ) | |

MOTION TO AMEND

FEDERAL RULES OF CIVIL PROCEDURE 59 (e)

MOTION TO ALTER JUDGMENT/ RECONSIDERATION

OF TITLE 28 U.S.C. 2255

Comes now the Petitioner/Movant Keith G. Coleman pro se and informa pauperis, in the above entitled action requesting this Honorable Court grant leave to file " **Motion to Amend** " previously file **Fed. Rules of Civil Proc. 59(e) motion,** for this motion is in support of **59(e) motion.** Pursuant to **Fed. Rules Civil Proc. 15 (c)(2)** Petitioner fully prays this Honorable Court construe pro se legal analysis liberally, see **Haines v. Kerner,** 404 U.S. 519.

32

Petitioner previously filed a " Motion to Reconsider Title 28 U.S.C. 2255 under **Fed. Rules of Civil Proc. 59(e)**, alleging numerous constitutional violations, and denial of federal rights, as well as ineffective assistance of counsel, at Pre-Trial,Trial and Appellate Review. Pertaining to these claims it is worth-mentioning that the preferred avenue for challenging such claims of ineffectiveness of defense counsel in a federal criminal trial is by collateral attack under 28 U.S.C. 2255,**United States v. Aulet**, 618 F2d 182, 185(2nd Cir. 1980), **United States v. Caggiano**, 899 F2d 99, 100(1st Cir. 1990), **United States v. Birges**, 723 F2d 666, 670(9th Cir.) cert. denied, 466 U.S. 943, 104 S.CT. 1926, 80 L.ED. 2d 472(1984).

Indeed, collateral review will frequently be the only means through which an accused can effectuate the right to counsel.... **Kimmelman v. Morrison**, 477 U.S. 365(1986). For an accused will often not realize that he has a meritorious ineffective claim until he begans collateral review proceedings, particularly if he retained trial counsel on direct appeal, as evident in the instant case.

As Petitioner has alleged in the previously filed **Rule 59(e) Motion**, counsel committed numerous constitutional errors that are patently unreasonable under prevailing norms of competent counsel, **Strickland v. Washington**, 466 U.S. 668(1984). Counsel's performance was deficient and fell below the constitutional command, in that counsel failed to raise in every-stage of the proceedings that the charges presented in the indictment constitute a **legal impossibility**. Counsel's ommission of raising this issue

allowed the Petitioner to be subjected to an alleged crime, of
of which the law does not make criminal.

Indeed, the **Doctrine of Legal Impossibility,** is procedurally
fundamental to due process, thus is a viable defense to charges
that meet the criteria, as in the instant case. Therefore con-
sistent with the doctrines purpose, this court should reasonably
find the circumstances in the instant case satisfies the doct-
rine's criteria. And consistent with the continuing validity of
the defense of " legal impossibility," Petitioner contends;

> **THE PETITIONER'S CONVICTION CONSTITUTES A LEGAL**
> **IMPOSSIBILITY TO A CRIME WHICH THE LAW DOES NOT**
> **MAKE CRIMINAL, NOR DOES IT EXIST IN LAW.**

Petitioner contends, no such prohibition within the circum-
ference of the **Fed. Rule of Criminal Proc.** exist, such as that
of which the accused now stands convicted, i.e., Conspiracy, to
aid and abet the distribution of cocaine, all in violation of
Title 21 U.S.C. 846....as to Count One. And Attempt, to aid and
abet the distribution of cocaine, all in violation § 846 in the
remaining counts. The constructing contexture of these statutes,by
way of which the government presented them in the indictment on-
ly alludes to a criminal wish, and reasons in a circle. The con-
texture of the statutes occassions a fundamental defect, i.e.
they inevitably create an impotent conclusion of Conspiracy to
Attempt, in violation of § 846. (see exhibit of indictment)(void
of any substantive count). Compare **United States v. Meachum,** 626
F2d 503(5TH Cir. 1980)(dismissed on grounds, Conspiracy to Att-
empt, fails to state an offense). The conclusions of the **Meachum**

court's decision must likewise apply in the instant case, ( The
Eleventh Circuit adopted the former Fifth Circuit's precedent
case law prior to Oct. 1, 1981).

The traditional analysis of the defense of impossibility dis-
stinquishes between legal impossibility(or) factual impossibility.
Legal impossibility is a clear defense to a charged offense.
Factual impossibility is not necessarily such a defense. The de-
fense of legal impossibility exist where a defendant's action,
if fully performed, would not constitute a crime, according to
the offense charged. The defense of factual impossibility exist
only where circumstances unknown to the defendant prevent his
commission of an offense, **United States v. Oviedo**, 525 F2d 881,
883(5th Cir. 1976).

For example, in the **United States v.Aguilar**, 21 F3d 1475(9th
**Cir. 1994)(en banc)**, Judge Aguilar had been convicted of illega-
lly disclosing a wire tap in violation of 18 U.S.C. 2232(c) and
endeavoring to obstruct justice in violation of 18 U.S.C. 1503.

In reversing the conviction of Judge Aguilar on the wire tap
charge, the court held

> " The present case however involves not just factual
> impossibility but legal impossibility. It is the
> latter which is dispositve here. The doctrine of
> legal impossibility has been a part of law for cen-
> turies, see **R.V. Carr**, 168, **Eng. Rep. 854 (1819)**,
> **(Defendant aquitted on grounds of legal impossibility)**.
> Where legal impossibility exist there can be no viol-
> ation of a statute....." Id, at 1482

Similarly, to the instant case, to the extent that the same
principle should apply, for no matter what " concrete action "

a defendant may take, if no statute existed in the indictment to authorize punishment for the alleged conduct or action, there is no way that the defendant can be legally held liable. For at the very least, the government's contexture of the statutes of which the Petitioner stands convicted, is an unwarranted expansion of the statutory language enacted by Congress. One which ignores the crucial phase(the object which makes the offense a crime), which is dispositive here.

For even assuming all the government's allegations were true, (without agreeing), the Petitioner could not be legally liable under the construction of the charged offense, for the alleged criminal conduct is not covered by any valid statutory language in the indictment.

It is worth-mentioning that even the Supreme Court have traditionally exercised restraint in assessing the reach of federal criminal statutes, both out of deference to the perogative of Congress, **Dowling v. United States**,473 U.S. 207, 87 L.ED 2d 152, 105 S.CT. 3127 (1985),and out of concern that " a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed, " **Mc Boyle v. United States**, 283 U.S. 25, 27, 75 L.ED 816, 51 S.CT. 340(1931).

The issue that occassion`a fatal flaw in the indictment here, is that the government failed to show in the indictment, that the Petitioner passed a certain line that would substantiate a criminal act, authorizing punishment for the same. For example, it can not be disputed that an indictment that alleges a Conspiracy to Attempt to distribute cocaine under any common sense

reading, displays(Title 21 U.S.C.841(a)(1) and 846 (Conspiracy to Attempt to distribute cocaine)Veering from this historically well-settled procedure and thus contrary to law, the indictment charged an invalid offense of (Title 21 U.S.C. 846 and 846) (Conspiracy to Attempt)(i.e., to aid and abet the distibution of cocaine).

Conspiracy to Attempt, does not state an offense against the United States, for Attempt in itself is not a crime,United States v. York, 578 F2d 1036(5th Cir.), cert denied, 439 U.S. 1005, 99 S.CT. 619, 58 L.ED. 2d 682(1978), for when Congress has deem an Attempt to be criminal, it has specifically so declared. Thus in the instant case the charges presents a legal impossibility to sustain a conviction, the principle explain in the Aguilar court.

However, the Aguilar decision was reversed in part by the Supreme Court, see United States v. Aguilar, 515 U.S. 593, 132 L.ED 2d 520 115 S.CT. 2357, but only to the extent the Court found the statute's interpretation asssesing the reach of Aguilar's conduct under the charged offense. And further found the Ninth Circuit's interpretation of the statute to be erroneous. However, to the extent of the Supreme Court's conclusion in that particular case, it is clearly distinguished and inapposite to the circumstances in the instant case. Unlike Aguilar's claim of legal impossibility depending on the sole interpretation of the statute, in the instant case, it is the absents of the statute that is problematical to the indictment, and constitutes a legal impossibility.

The rationale behind Petitioner's position is clearly stated in Meachum supra, explaining the impossibility of a conviction charging an offense such as Conspiracy to Attempt, in violation

of § 846, as stated in the case at bar.(Conspiracy § 846)(i.e., to aid and abet the distribution of cocaine, as to Count One) and (Attempt § 846)(i.e., to aid and abet the distribution of cocaine as to the remaining counts....excluding Count Three § 924(c)).

In addition to Petitioner's claim of legal impossibility, relevant to counts 2,4,5,6,7,and 9, see **United States v. McGhee**, 854 **F2d 905(6th Cir. 1988)(persuasive authority),**instructing that a charge offense such as " Attempt to facilitate " in violation of § 846 , is not a legal cognizable offense under § 846,(same as Attempt to aid and abet in violation of § 846).

Traditionally, the law does not proscribe an Attempt unless define within a substantive offense, and the defendant's intent is accompanied by a dangerous probability of success, **Swift & Co. v. United States**, 196 U.S. 375, 396, 25 S.CT. 276, 279, 49 L.ED. 518(1905); **Quality Foods v. Latin AM. Agribusiness Dev.**, 711 F2d 989(1983), obviously the circumstances in the instant case falls far short of this rationale, albeit(1) the Attempt is not define within a substantive count(2) there can be no dangerous probability of success, whereas the government creates and runs the alleged offense from start to finish. In sum,it is impossible under any legal statutory construction, to Conspire to only Attempt,in violation of § 846.

Surely the resolution of this issue is intertwined with the resolution of the question of whether Petitioner received the effective assistance of counsel, see **Fed. Rules Civil Proc. 59(e) Motion.**

7

The Supreme Court and this Circuit have held that, as a rule, failure to raise an issue on direct appeal from a criminal conviction constitutes a procedural bar to raising such issue in a collateral proceeding, see **United States v. Frady**,456 U.S. 152, 165(1982). Here, the Petitioner's counsel failed to raised in pre-Trial, Trial, and Appellate Review the legal impossibility of which the accused stands convicted.

At first blush, the procedural bar rule would preclude review now of this issue. However, the **Frady** court have fashioned two exceptions to the procedural bar rule. First, the court held, in an appropriate case the court can reach the merits of a claim, if to not do so would result in a fundamental miscarriage of justice. Second, the court held that in an appropriate case the court can reach the merits of a claim in a collateral proceeding if the Petitioner can show " cause " and " prejudice." **Id at 168, 170-71**

The standard for demonstrating a fundamental miscarriage of justice was pronounced by the Supreme Court in **Sawyer v. Whitley**, 112 S.CT. 2514, 2515 n.6(1992), **Coleman v. Thomas**,501 U.S. 722, 750(1991). Nonetheless, because the claim is ineffective assistance of counsel, which is " cause " to overcome procedural bar, **Murray v. Carrier**,477 U.S. 478 (1986), thus Petitioner need only demonstrate prejudice. This prong of the exception to the procedural default announced in **Frady**, is satisfied germane to the prejudice prong of **Strickland supra**. Namely, because being held accountable for an offense of which the law does not make criminal is presumed prejudicial per se, and can never be treated as harmless, inherently resulting in a complete miscarriage of justice, inevit-

ably justifying relief under § 2255, **Davis v. United States**,417 U.S.
339, 346-47, **Hill v. United States**,368 U.S. 424, 428 (1962). Assum-
ing arguendo, the error is presumed prejudicial, see **Ex parte Bain**,
121 U.S. 1, (1887), **Stirone**, 361 U.S. 212(1960), **Russells**,369 U.S.
749(1962), **Meachum**, 626 F2d 503,(5th Cir.-1980) **Mc Ghee**, 854 F2d,
905(6th Cir. 1988), **Gayle**,967 F2d 484, 485(11th Cir. 1992)(en banc)
cert. denied 507 U.S. 967(1993), **Fern**,155 F3d 1324-25, see also
**United States v. Thevis**, 665 F2d 616, 645(5th Cir. Unit B), cert.
denied, 459 U.S. 825, 103 S.CT. 57, 74 L.ED.2d 61 (1982), Fed. Rule
Crim. Proc. 12(b)(2), accordingly, it is well-settled in such cir-
cumstances the question of prejudice is irrelevant, and the "only"
consideration is the nature of the error, i.e., under the **U.S. Con-
stitution Amend. V**, states in no " uncertain terms,"

in [pertinent part];

> No person shall be held to answer for a capital,
> or otherwise infamous crime, unless on presentm-
> ent or indictment of a grand jury......nor shall
> any person be subjected for the same offense to
> be twice put in jeopardy of life or limb....nor
> be deprived of life, liberty, or property, with-
> out due process of law...,**U.S. Const. Amend. V.**

Bolstering this " bedrock " constitutional rule of law is the
**U.S. Constitution Six Amendment**, in [pertinent part];

> In all criminal prosecutions, the accused shall
> enjoy the right to a speedy and public trial,by
> an impartial jury of the State and district where-
> in the crime shall have been committed....and to
> be informed of the nature and cause of the accus-
> ation.....and to have the assistance of counsel for
> his defense.

9

Thus, taken together the Fifth and Sixth Amendments require criminal convictions to rest upon a jury dertermination that the defendant is guilty of every element of the crime with which he is charged, **Sullivan, v. Louisiani**, 508 U.S. 275, 277-278, 124 L.ED. 2d 182, 113 S.CT. 2078, **United States v. Gaudin**,515 U.S. 506(1995) **In re Winship**,397 U.S. 358, 364(1970).

Importantly, this is a penal statute, of which the accused stand convicted, and must be construed strictly; not so strictly, indeed as to defeat the clear intention of Congress, but the words employed must be understood in the sense they were obviously used, see **United States v. Wiltberger**, 5 Wheat. 85. If, taking the whole contexture of the statutes of which the accused stands convicted together, it is apparent that it was not the intention of Congress to charge double § 846s defining the same course of couduct, absent a substantive count. Thus, the principle question left for consideration in this issue is, whether Congress, in using the words in § 846:

        " any offense defined in this subchapter "
intended to include the offense of " Attempt." Congress had no such intent, **Meachum** supra. Moreover, if Congress has not declared an act done to be a crime against the United States, the courts have no power to treat it as such, **United States v. Hudson**, 7 Cranch, 32. Thus to broaden the texture of the statute, § 846, would be to make a new law, not to enforce an old one. This is no part of the court's duty, **United States v. Reese et al**, 92 U.S. 214; (1875) U.S. Lexis 1785; 23 L.ED. 563; 2 Otto 214. The crux of this rationale is, it would certainly be dangerous if the legislature

could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. Surely, the court enforce the legislative will when ascertained, if within the constitutional grant of power. For within it's legitmate sphere, Congress is Supreme,and beyond the control of the courts; Reese supra, only if it steps outside of it's constitutional limitations, and attempts that which is beyond it's reach, the courts are authorize to, and when called upon in due course of legal proceedings must, annul it's encroachments upon the reserved power of the people.

Because it does not appear that Congress has stepped outside the constitutional limitations in the instant case, but rather the court has convicted the accuse of a crime of which Congress (**did not**)make criminal. With regards to this conclusion, and expressed in the Reese court, " if the legislature undertakes to define by statute an offense, and provide punishment, it should expressed its will in language that need not deceive the common mind." Consistent with this rationale, the court should necessarily revist the contexture of the statutes of which the accused stands convicted, and reasonably find the language in the indictment to be contrary to any Congressional intent, and therefore decide that Congress has not as yet provided by " appropriate legislation " for the punishment of the offense charged in the indictment, i.e., Conspiracy to Attempt, a legal impossibility. (Conspire to commit an Attempt, an inchoate offense, and simultaneously conspire to fail at the effort...846 in violation of 846)

11

Relative to the issue set-forth in this claim, the Petitioner was also convicted of Title 18 U.S.S. 924(c) as to count three of the indictment. Consequently, count three rest upon an improper predicate offense, i.e., count two , therefore it cannot survive. In addition counsel proved ineffective under the performance prong of **Strickland supra**, in that counsel failed to put the prosecution to the necessary adversarial testing required in our system of justice, **Cronic**,466 U.S. 648, 655(1984) for counsel failed to raise at Trial, Sentencing Court or on Appellate Review that;

> **COUNT TWO 924(c) CONVICTION REST UPON AN
> IMPROPER PEDICATE OFFENSE, AND THE GOVER-
> NMENT FAILED TO PROVE PETITIONER KNOWINGLY
> CARRIED A FIREARM(" IN RELATION TO ")A DRUG
> TRAFFICKING CRIME, COUNSEL FAILED TO REQUEST
> SPECIAL JURY INSTRUCTIONS ON (IN RELATION TO)**

Petitioner contends the indictment charged 924(c) as to count three, resting upon the improper offense of the lone Attempt § 846 of count two. In addition to count two being an erronous count, Petitioner argues that " mere presence " of a weapon does not demonstrate that weapon was knowingly " used **or** carried within the meaning of the federal statute, making it unlawful to use and carry a firearm " during and in relation to a drug trafficking crime 18 U.S.C. 924(c).

## PROCEDURAL HISTORY

Prior to 1984, § 924 (c)(1) and (2) made it unlawful to use a a firearm to commit a felony or carry a firearm unlawfully during the commission of an alleged felony 18 U.S.C. 924(c)(1) and (2)

12

(West Supp. 1983).

In 1984, Congress revised § 924(c) by consolidating subsect-
ions (c)(1) and (2) and by substituting the phrase " during and
in relation to " for the word " during." Congress also changed
the underlying predicate offense from any " felony " to any "crime
of violence." 18 U.S.C. 924(c)(West Supp. 1985). In 1986, the
statute was once again revised to add " drug trafficking crime "
as an underlying predicate offense; pertinent to the instant case.
(§924(c) (West Supp. 1986).

When Congress added the " in relation to " language in 1984,
it was suggested that;

> " the requirement that the firearm's use or
> possession be " in relation to " the crime
> would preclude its application in a situat-
> ion where its presence played no part in
> the crime,...,S. Rep No. 225, 98th Cong.,
> 1st Sess. 312, 314(1983), reprinted in 1984
> U.S. Code Cong. & Ad. News 3182, 3492, n. 10

Relative to the instant case, the § 924(c) count must fail.
Namely, because the government never proved the weapon was in
fact " in relation to " the alleged " drug trafficking crime."For
it cannot be disputed that the Petitioner was legally required to
carry a firearm at the time of the alleged offense, irrespective
of the government created offense. Accordingly, the weapon allege
to be carried by the Petitioner at the time of the alleged offense
was coincidental to the alleged crime, and nothing more than mere
present.

As construed by many courts, presence of a gun and the commi-
ssion of drug-trafficking offenses could satisfy the statutory

requirement that the gun was carried during and in relation to a drug-trafficking offense, **(if),** the firearm is present for alleged protection or to facilitate the likelihood of success. But, mere presence however, does not demonstrate that it was knowingly carried in relation to a drug-trafficking crime. To prove that a firearm was carried " in relation to "underlying drug trafficking crime, case-law instructs a relationship must be established between the firearm and the underlying crime. And in determining whether such a relationship existed, there must be a direct nexus between the weapon and the crime, meaning the weapon must have played an integral part to the crime, **United States v. Morrow,** 923 F2d 427 (6th Cir. 1991), **United States v. Brown,** 915 F2d 219, 224 (6th Cir. 1990)(Citing the Senate Report at 314 n. 10) U.S. Code Cong. & Admin. News 1984, p. 3492) **United States v. Poole,** 878 F2d 1389, 1393 n. 3(11th Cir. 1989).

Stated another way, carrying of a firearm during and in relation to a drug trafficking offense cannot prevail unless, the firearm played a purpose or function in carrying out the drug-trafficking crime. **United States v Range,** 94 F3d 614(11th cir. 1996). This claim is of exceptional importance because a claim base on the insufficiency of evidence raises a Fifth Amendment constitutional claim, **Jackson v. Virginia,** 443 U.S. 307(1979)and the prosecution's burden to prove every element of the offense is not relieved by a defendant's decision not to contest an essential element of the offense, **Estelle v. McGuire,** 502 U.S. 62, 69(1991).

In addition, and most importantly, Petitioner's counsel proved ineffective in the performance prong of the **Strickland** standard,

in failing to raise this issue at trial, moreover failed to request a special instruction on " in relation to " a drug-trafficking crime; **United States v. Hammonds,** 425 F2d 597(D.C. Cir. 1990) (....trial counsel's failure to request any jury instructions compounded with other errors, amounted to ineffective assistance of counsel), see **Noland v. Dixon**,808 F. Supp. 485(W.D.N.C. 1992).This error by counsel was of serious constitutional dimension, **Cronic,** 466 U.S. 648, 655(1984), Namely,(1) Congress addition of the phrase " during and in relation to " a drug trafficking crime, makes it clear that § 924(c)(1) is not merely a possession statute; **Smith v. United States,** U.S.   ,   ,113, S.CT. 2050,(1993).

Although the phrase " in relation to " is expansive, it does delineate the outer boundaries of § 924(c)(1); The **Smith** court explain;

> ' The phrase " in relation to "...clarifies
> that the firearm must have some purpose or
> effect with respect to the drug trafficking
> crime; its presence or involvement cannot be
> the result of accident or coincidence. As
> one court has observed, the " in relation to"
> language allys explicitly the concern that a
> person could be punished under § 924(c)(1)
> for committing a drug-trafficking offense
> " while in the possession of a firearm " even
> though the firearm's presence is coincidental
> or entirely " unrelated " to the crime...Instead the gun at least must "facilitate", the
> drug-trafficking crime. Id at 2059.

Similarly, and consistent with Petitioner's position, in the **United States v. Thomas,**86 F3d 647(7th Cir. 1996), in addition to

evidence of " carrying " evidence was also offered that defendants owned handguns which they kept at home for protection. The court reversed the conviction, holding that because;

> " the jury may well have relied upon this evidence in convicting the defendants... we are not convinced that a properly in- structed jury would have convicted...under 18 U.S.C. 924(c)(1)." Id at 650-51

Another case mirrors Petitioner's position, i.e., **United States v. Richardson**,86 F3d 1537(10th Cir. 1996). Richardson was charged with carrying a firearm during and in relation to the predicate crime of possession of methamphetamine and conspiracy. The court held, there was no evidence that **Mr. Richardson** carried a firearm during and in relation to the possession of methamphetamine. Although the firearm were found on **Richardson's** person and in his truck. There was no evidence reference to the firearm at trial, used to protect methamphetamine.

The **Richardson** court reinterated the evident purpose of § 924 (c); which was to impose more severe sanctions where firearms fac- ilitated, the commission of the drug transaction, **United States v. Sullivan**, 919 F2d 1403(10th Cir. 1990)(quoting **United States v. Stewart**, 779 F2d 538(9th Cir. 1985)). In **Sullivan**, one defendant was convicted of a Conspiracy in violation of section § 846 and charged with carrying a firearm during and in relation to the Con- spiracy charge, **Id at 1408**. The **Sullivan** court found sufficient evidence to support the finding that the defendant possessed a firearm, **Id at 1430-31**. However, the court noted that the govern- ment failed to cite any specific evidence to indicate that the

defendant carried a firearm during and in relation to the drug
conspiracy, **Id at 1432.**

Relative to the instant case, the government based its theory
on the Petitioner's (position) to attempt to aid their alleged
drug crime. But failed to prove the defendant's weapon played an
integral role in the offense. The government never alleged nor did
any evidence support a finding that the defendant intended the
weapon carried to be available for use during the alleged drug-
trafficking crime. But rather, the firearm's " mere prence " was
necessarily part of a uniform.

Courts have held that a defendant may overcome the §924(c) count
" in relation to " a drug-trafficking crime, by clear evidence
that the weapon was present for reasons, other than the alleged
crime or predicate offense, **Richardson** supra. **Id at 1537.** Notably,
there were several counts of the same scenarios conducted by the
government, nonetheless, only count two represents an underlying
predicate offense of § 924(c) of count three. This inconsistency
bolsters proof that the firearm was coincidental to count two, in
fact the scenario was conducted just prior to the defendant going
to work, which obviously required the lawful carrying of a firearm
and " mere presence " to the alleged offense.

In addition, as the Supreme Court explained in the **United States
v. Miller,** 417 U.S. 130(1985).

> " A conviction that rests, no matter how comfortably,
>   on proof of another offense cannot stand."

Therefore consistent with this rationale, count three § 924(c)
conviction can only stand if the distinct role of the weapon,

effected the success of the alleged offense, and not merely the firearms presence coincidental to the offense. Accordingly, the court should find the government failed to prove the essential element of § 924(c)(1), i.e., " in relation to " a drug-trafficking crime in the instant case, thus count three must be dismissed.

The court should further find that § 924(c)(1) relies on a improper predicate offense, i.e. Attempt § 846 (..to aid and abet the distribution of cocaine) and likewise find counsel deficient in the performance prong of **Strickland supra.**, in failing to object to the improper predicate offense as well as raising these issues on Appeal. Most importantly,because the deficient performance of counsel consisted of having the Petitioner stand trial to a legal impossibility, and further be convicted of an offense of which he could not, as a matter of law, be convicted, and having to convince this court it should forego application of the procedural bar rules, inevitably satisfies **Strickland's** standard of pejudice. Since the Petitioner's conviction rest upon a legal impossibility, it is submitted that the real issue is the appropriate remedy, regardless of whether counsel was ineffective or not. Without question the Petitioner is entitled to relief under § 2255.

> **THE COURT ERRED IN ITS CALCULATION OF A BASE OFFENSE LEVEL OF 34; COUNSEL WAS INEFFECTIVE IN ARGUING THE INCORRECT LEGAL STANDARD FOR CALCULATING ALLEGED DRUG QUANTITY IN THE INSTANT CASE, AT SENTENCING, AND ON APPELLATE REVIEW.**

Petitioner reinforces his position, as formerly stated in the **Rule 59(e) Motion**, that is...the district court erred in concluding that the **Base Offense Level** is 34, absent a specific charge

18

of at least (15) kilograms of cocaine in the indictment, substant-
iated by a finding, beyond reasonable doubt, by the trier-of-fact,
(jury). Without question, Petitioner clearly asserts the correct
standard, as explained in **Apprendi v. New Jersey**, (2000 US) 147 L.
ED. 2d 435, 120 S.CT. 2348, holding;

> The Constitution requires that any fact that
> increases the penalty for a crime beyond the
> prescribe statutory maximum, other than the
> fact of a prior conviction, must be submitted
> to a jury and proved beyond reasonable doubt.

Surely, the alleged drug quantity in the instant case trumps a
penalty, that exceeds the maximum prescribed, contrary to the
**Apprendi** standard. For even under the **pre-Apprendi** standard, the
district court's adoption of the **Base Offense Level**, of the all-
eged drug quantity in dispute would yet be erroneous.

For example, a decision by this Circuit most recently cited as
**United States v. White**, (D.C. Docket No. 97-00019-CR-5-LAL)(Jan.
19, 2001)(per curiam) bolsters Petitioner's position. In the **White**
court, after considering the transcript, the court concluded there
were no basis in the record for the district court's determination
that **White** possessed in excess of 35 grams of crack cocaine. The
court explained that when a quantity of drugs are in dispute, the
government may not have the benefit of the district court accept-
ing its assertions of drug quantity without any evidence on that
point. Like **White**, in the instant case there were no evidence pro-
ffered at trial to substantiate an agreement to allegedly protect
any specific amount of cocaine. Like **White** no amount of drugs were
negotiated , thus consistent with the **White** rationale, there were

no basis in the Petitioner's record for the district court's determination for a **Base Offense Level** of **34**. In fact, the government concession substantiates that the Petitioner had no knowledge of the amount of drugs the government allegedly used for there scenarios, until after trial.

However, the government alleges that the Petitioner stated to the effect of (truck loads of ki's), assuming arguendo,(without agreeing), any statement to that effect would not put the question of drug quantity at rest, in fact this alleged statement misrepresents the government's own concession of drug quantity, i.e., 4.7 kilograms of cocaine.(see **PSR**).

Counsel for the Petitioner objected to drug quantity,but ironically argued the incorrect legal standard. Counsel argued absent a possession of drugs by the accused, the court must calculate monies used to represent a specific finding of drug quantity, see (Brief for the App. ppg. 16 line 11). This standard employed by counsel to represent drug quantity was erroneous and contrary to the government's scenarios. Counsel's rationale could only be logically applied in a buyer-seller relationship, which travels outside the record of the government's theory of scenarios, for the scenarios were not base on a buyer-seller relationship, but allege protection of an undetermined amount of cocaine. Thus, in calculating drug quantity for a **Base Offense Level** it is necessary for the court to establish beyond reasonable doubt, by the trier of fact(jury), that the defendant made an illicit agreement to protect a specific amount, otherwise **level 12** must apply, as expressed in the **White** court, and represented in the instant case.

20

Accordingly, this error by counsel was not a strategic decision, but rather demonstrated lack of experience, and lack of being familiar with federal law, see **Armstrong v. Dugger**, 833 F2d 1430(11th Cir. 1987) see also **Martine v. Rose**, 744 F2d 1245(6th Cir. 1984)(...holding *trial counsel's tactics can constitute ineffective assistance of counsel, if they fall outside the wide range of professionally competent counsel on the prevailing norms*).

Not withstanding, a criminal trial need only be fundamentally fair and not perfect, but, because counsel's failure to challenge the drug quantity under the correct legal standard, counsel simultaneously failed to put the prosecution to the meaningful adversarial testing require by our system of justice, **Cronic**, 466 U.S. 658(1984). This error was of constitutional dimension, in that it relieved the prosecution of its burden of proof on drug quantity, under any standard(reasonable doubt or perponderance of the evidence standard). This serious constitutional error by counsel, attributed to the *defendant's extended sentence*, see **Glover v. United States**, 531 U.S. ___,148 L.ED. 2d 604, 121 S.CT.(2001).

Counsel's errors can also be attributed to the district court's failure to grant counsel's request for a continuance. Therefore, failing to allow counsel time to adequately research the law and prepare for trial, see( Motion for Continuance exhibit in previously filed Motion to Amend Rule 59(e), Counsel stipulating grave prejudice would occur, in the event of the court denying Motion for continuance). See also **Hintz v. Beto**, 379 F2d 937(5th Cir. 1967), and **Wade v. Armontrout**, 798 F2d 304(8th Cir. 1986)(holding, **trial court's denial of defendant's motion for continuance attributed**

to the defendant receiving ineffective assistance of counsel, beca-
use counsel was not prepared for trial, and required an evidentiary
hearing to resolve the claim).

   Notably, the Petitioner's circumstances are on point with the
**Hintz** and **Wade** courts decisions, bolstered by counsel's own cons-
ession, i.e., that the district court attributed to counsel's in-
effectiveness. Thus, constructively denying the Petitioner his Sixth
Amendment right to counsel. Had counsel been alloted time to pre-
pare for trial, there is a reasonable probability that the outcome
of the proceedings would have been different, **Strickland** supra. **Id.**
**at 693, Code v. Montgomery,**799 F2d 1481-83(11th Cir. 1986)**, a pro-
ability sufficient to undermine confidence in the outcome. **Id at**
**694(emphasis added).** The result of the proceedings can be rendered
unreliable, and hence the proceeding itself unfair, even if the
errors of counsel cannot be shown by the preponderance of the evid-
ence to have determined the outcome, **Id. at 694.**

   It is worth-mentioning, and relative to the instant case, i.e.,
in **Chapman v. California, 386 U.S. 18, 23(1967),** the Supreme Court
acknowledged that certain constitutional rights are " so basic to a
fair trial, that their infraction can never be treated as harmless
error." **Id., at 23 n. 8,** Among these rights is the right to the
assistance of counsel **Id.** The right to effective assistance of cou-
nsel **McMann v. Richardson, 397 U.S. 759, 771, n.14(1970).** Surely,
this right extends to the Petitioner. Hence,justifying relief under
Title 28 U.S.C. 2255.

## RELIEF SOUGHT

**Wherefore** Petitioner fully prays this Honorable Court grants relief in the following(1) Dismiss Petitioner's indictment as a matter of law; Or(2) Vacate conviction and remand for new trial, or(3) or **order** evidentiary hearing or any other relief this court deem appropriate.

_22 Apr. 2001_
Date

Respectfully Submitted

KEITH G. COLEMAN 09587-021
P.O. BOX 16030
BEAUMONT, TEXAS 77720-6030

# CERTIFICATE OF SERVICE

I, KEITH G. COLEMAN_____, hereby certify that I have served a true and correct

copy of the following:  AMENDMENT TO  MOTION UNDER RULE 59(e)

which is deemed filed at the time it was delivered to prison authorities for forwarding to

the court, *Houston v Lack*, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation

and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope

addressed to:  (3) Copies

| | |
|---|---|
| Clerk of Court | U.S. DEPT. OF JUSTICE |
| UNITED STATES DISTRICT COURT | U.S. ATTORNEY'S OFC. |
| SOUTHERN DISTRICT OF GEORGIA | SOUTHERN DISTRICT OF GA. |
| SAVANNAH, DIVISION | SAVANNAH, DIVISION |
| P.O. BOX 8286 | P.O. BOX 8999 |
| SAVANNAH, GEORGIA 31412 | SANANNAH, GEORGIA 31412 |

and deposited same in the United States Postal Mail at the United States Penitentiary,

Beaumont, Texas, on this ____22th_____ day of ___APRIL_____ 2001

KEITH G. COLEMAN 09587-021
U.S P. Beaumont
P.O. Box 26030
Beaumont, Texas 77720-6030